[Civ. No. 68357. Second Dist., Div. Seven. Nov. 23, 1983.]

PACIFICA CORPORATION, Plaintiff and Appellant, v.
CITY OF CAMARILLO et al., Defendants and Respondents.

**COUNSEL**

Raymond C. Clayton and Cohen, Alexander & Clayton for Plaintiff and Appellant.

Royal M. Sorensen and Colin Lennard, City Attorneys, Burke, Williams & Sorensen, Mark C. Allen, Jr., Katherine E. Stone, Virginia R. Pesola, David D. Dahl, T. Dale Pease and Pease & Barron for Defendants and Respondents.

**OPINION**

**PAEZ, J.**\*—Appellant Pacifica Corporation (Pacifica) appeals from a judgment denying its petition for a peremptory writ of mandate under Code of Civil Procedure section 1094.5. By its petition Pacifica sought to compel respondents City of Camarillo (City) and the Camarillo City Council (Council) to grant its 1982 application for a residential development allotment under the City's residential growth control ordinance (Camarillo Mun. Code, § 20.01 et seq.), and to vacate its decision awarding development allotments to respondents Lindborg-Dahl Investors, Inc., the Wittenberg

---

\*Assigned by the Chairperson of the Judicial Council.

Corporation, Midcoast Builders, Inc., Barclay Hollander, Giordano Co., Inc., and Louis Zaich.

The critical issue raised by this appeal is whether the Council's decision to award or deny a development allotment is legislative or adjudicatory. The trial court held that it is legislative and, accordingly, restricted its review to a determination of whether the decision was arbitrary or capricious. Our analysis of the growth control ordinance, however, leads us to conclude that the Council's decision is adjudicatory. Thus, our resolution of this issue and other related issues requires that the judgment be reversed and the case remanded for further proceedings.

*The Camarillo Residential Growth Control System.*

On June 2, 1981, the voters of the City of Camarillo adopted, by initiative, a residential growth control ordinance (Growth Control Law) (Camarillo Mun. Code, § 20.01 et seq.)[1] for the purpose of establishing "control over the quality, distribution and rate of growth of the City."[2] (§ 20.01.040, subd. D.) The Growth Control Law establishes a system and plan for controlling the city's rate of growth. First, it limits the number of residential units that can be constructed to 400 per year through 1995. (§ 20.01.070, subd. A2.)[3] Second, it establishes a residential development evaluation board (Board) (§ 20.01.060) to evaluate the impact of a planned residential development on public services and facilities, and the development's contribution to public welfare and amenity. (§ 20.01.090.)

The Growth Control Law requires developers to apply annually for residential development allotments before the City will issue building permits.[4] (§ 20.01.080.) The Board is required to evaluate each proposed development against 19 specific criteria. (§ 20.01.090.) When evaluating a development's impact on public services and facilities, the Board must consider

[1] Unless otherwise noted, all references are to the Camarillo Municipal Code.

[2] The Growth Control Law declares in part: "It is the intent of the people of the city to achieve a steady, rather than a fluctuating, overly rapid, rate of residential growth each year in order that the services provided by city, school, park, utility and/or service agencies operating in the city can be properly and effectively staged in a manner which will not overextend existing facilities, and in order that deficient services may be brought up to required and necessary standards while minimizing, by means of long-range planning, the avoidable costs of short-sighted facility expansion." (§ 20.01.040, subd. C.)

[3] The allotment for each year is not an inflexible limitation. The Growth Control Law does provide for a 10 percent variance (40 units) below or above the 400-unit annual figure. (§ 20.01.070, subd. B.)

[4] Projects of four or less residential dwellings, fourplexes or lesser numbered multiple dwellings on a single lot, single family residences, and federally or state subsidized low income or senior citizen projects are exempt from the limitations of the Growth Control Law. (§ 20.01.050.)

such factors as the capacity of the water system to service the needs of the proposed development, and the capacity of the local schools to absorb any increase in children.[5] (§ 20.01.090, subds. A1 and A5.) A development's contribution to public welfare and amenity must be evaluated against such factors as the amount and character of open space, and the potentially harmful impact on trees and archeological sites.[6] (§ 20.01.090, subds. B2 and B8.)

The Board must rate each development on all applicable criteria on a scale of zero to ten (zero indicating very poor, ten indicating excellent). (§ 20.01.090, subd. A.) After awarding points, it must adopt two lists; one ranking the developments for their impact on city services and facilities, and the other for their contribution to public amenity and welfare. (§ 20.01.090, subd. C.) The Board is then required to publish the lists, hold a public hearing and consider any appeals. (§ 20.01.090, subd. D.) Thereafter, the Board is required to forward the lists and its recommendations to the Council. (§ 20.01.090, subd. E.)

The Council is required to consider, at a public hearing, the Board's recommendations and rankings, and the action taken by the Board on any appeals. It must then compile one list ranking all the planned developments and from that list award development allotments. (§ 20.01.100, subd. A.) There are, however, two limitations imposed on the Council: it is precluded from awarding more than 60 percent of the annual allotments to a single developer and it must eliminate from consideration any development that did not receive a certain minimum percentage of points awarded by the Board. (§ 20.01.100, subds. A2 and A3.)[7]

*The 1982 Allotment Awards.*

For 1982 development allotments, 16 developers submitted 21 applications for construction of 1,428 residential units.[8] Pacifica submitted an ap-

---

[5] Additionally, the Board must also consider the impact on the sewer system, the fire department, the street system, and Highway 101; and whether the development received tentative tract map approval before the effective date of the law. (§ 20.01.090, subd. A.)

[6] The Board must also consider the harmony of the site and architectural design with neighboring development; extensions of existing foot or bicycle paths, equestrian trails, and/or greenbelts; provision of needed public facilities; the efficiency of the site and architectural design for traffic circulation and safety; the impact of the development site on the topography; the provision of water conservation features; the provision of energy generation and conservation features; and the absence of a deleterious impact on the physical and/or aesthetic environment. (§ 20.01.090, subd. B.)

[7] Under subdivision A2 of section 20.01.100, the Council is required to establish the maximum number of allotments that may be awarded to a single developer. On October 28, 1981, the Council adopted "Resolution No. 81-247" establishing the 60 percent limitation.

[8] The developers sought allotments for construction of 638 condominiums, 422 single family dwellings, 193 apartment units, 75 single family dwelling lots and 100 units of manufactured housing.

plication for a planned development of 64 single family dwelling lots. Although the record does not reflect the proceedings before the Board, it did evaluate and rate all of the proposed developments. The record does show, however, that Pacifica's lot development ranked tenth in total combined points and eighth in percentage of total points awarded.[9]

On May 17, 1982, and June 2, 1982, the Council held public hearings to consider the Board's recommendations and rankings, and to award development allotments for 1982. During the course of the public hearing on May 17, 1982, each developer made a presentation to the Council regarding the merits of its development; responded to the Board's ranking; and, at the Council's request, indicated the minimum number of allotments needed to insure the financial feasibility of the development. Following each presentation the Council confirmed the points awarded by the Board. At the conclusion of the presentations, the Council continued the public hearing to June 2, 1982, for submission of written comments.

At the June 2, 1982, hearing, the council president, in an attempt to identify areas of agreement, polled the members of the Council for tentative allocations. Following this "straw poll" the Council focused on those developments where there was disagreement over tentative allocations. Pacifica's application fell within this category. Several councilmen expressed concern over the extensive costs of the land preparation for Pacifica's lot development; that the high costs made it difficult to proceed with the project on a piecemeal basis; and that Pacifica's tentative tract map approval would expire in early 1983. Despite the Council's attempt to narrow the issues, it was still unable to reach a tentative allocation for Pacifica. After considering the remaining applications, the Council indicated that it intended to deny Pacifica's application.

After the straw poll, and related discussions, the Council officially voted to confirm the tentative allocations as the 1982 residential development allotments. Pacifica, although ranked 10th by the Board in total combined points, did not receive a development allotment for 1982. On the other hand, respondent Midcoast Builders, which ranked last in total points, received an allotment for construction of 24 condominium units.[10]

---

[9]Lindborg-Dahl Investors, Inc. and the Wittenberg Corporation ranked 12th in total points; Giordano Co., Inc. ranked 16th; Barclay Hollander ranked 18th; and Midcoast Builders, Inc. and Louis Zaich ranked 19th.

[10]The other respondent developers received the following allotments: Lindborg-Dahl Investors, Inc.—34 (condominiums); the Wittenberg Corporation—59 (single family dwellings); Giordano, Co. Inc.—7 (single family dwellings); Barclay Hollander—30 (manufactured housing); and Louis Zaich—11 (single family residential lots).

*The Trial Court Proceedings.*

On July 2, 1982, Pacifica commenced this mandamus action to compel the Council to grant its application and to set aside the allotment awards to those developers who received fewer total points from the Board (respondent developers herein). In its petition, Pacifica contended that the Council did not comply with the Growth Control Law because it failed to adopt a final ranking list prior to awarding allotments, and applied improper standards in denying Pacifica's application. The principal issue considered by the trial court, however, was whether the Council's decision denying Pacifica's application was adjudicatory or legislative. After examining the development allotment system, the trial court determined that the Council was primarily concerned with the impact of its decision on future development of the City. Because of the nature of this "dominant concern," the court characterized the decision as legislative. The trial court then concluded that the decision was neither arbitrary nor capricious and that the Council complied with the requirements of the Growth Control Law. Accordingly, the trial court denied the petition and Pacifica appealed.

## CONTENTIONS

In this appeal Pacifica primarily contends that the decision to grant or deny a development allotment application is adjudicatory and that the scope of judicial review is the substantial evidence test. Pacifica also contends that by failing to adopt a final ranking list the Council did not proceed in the manner required by law. (See § 20.01.100, subd. A.) Pacifica further contends that the Council abused its discretion because it failed to render findings and relied on criteria that are not specifically listed in the Growth Control Law.

## DISCUSSION

*Status of the Residential Development Allotment Process.*

■ "Generally speaking, a legislative [act] is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts. [Citations.]" (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; see also *Quinchard* v. *Board of Trustees* (1896) 113 Cal. 664, 670 [45 P. 856]; *Santa Ana Tustin Community Hospital* v. *Board of Supervisors* (1982) 127 Cal.App.3d 644, 650 [179 Cal.Rptr. 620].) ■ The distinction between legislative and adjudicatory acts has also been described by the California Supreme Court as follows: "Whenever an act undertakes to determine a question of

right or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one, and not the proper exercise of legislative functions." (*Wulzen* v. *Board of Supervisors* (1894) 101 Cal. 15, 24 [35 P. 353], quoting *Sinking-Fund Cases* (1878) 99 U.S. 700, 761 [25 L.Ed. 496, 504, 516].) ■ The cases also hold that the classification of an administrative decision as adjudicatory or legislative does not depend on the nature of the decision-making body (*Quinchard* v. *Board of Trustees, supra,* 113 Cal. at p. 669), the procedural characteristics of the administrative process (*Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 841 [130 Cal.Rptr. 169]; *Rivera* v. *Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 586-587 [71 Cal.Rptr. 739]), or the breadth or narrowness of the administrative agency's discretion (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 834 [27 Cal.Rptr. 19, 377 P.2d 83]).

■ Here the decision to grant or deny a development allotment application involves the basic elements of the adjudicatory process: the application of established criteria to existing facts. As outlined above, when acting on an allotment application, the Council is required to consider the Board's recommendations and rankings, adopt its own ranking list, and then award allotments from that list. The resolution of the issues raised by an application "involves the exercise of judgment, and the careful balancing of conflicting interests, the hallmark of the adjudicative process." (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 615 [156 Cal.Rptr. 718, 596 P.2d 1134].)

Respondents argue that since the decision to grant or deny an application will affect the course and pattern of residential development of the city, the Council's decision is legislative. Thus, respondents contend that the decision is analogous to zoning enactments which have traditionally been characterized as legislative. (See *Arnel Development Co.* v. *City of Costa Mesa* (1980) 28 Cal.3d 511 [169 Cal.Rptr. 904, 620 P.2d 565].) Under the existing Growth Control Law, however, the Council's primary function is to grant or deny a developer's allotment application. It is not engaged in the adoption of a rule or policy to be applied in future cases.

The Council's decision does not differ significantly from other adjudicatory land use decisions such as the issuance of a coastal development permit (see *Patterson* v. *Central Coast Com., supra,* 58 Cal.App.3d 833); approval of a subdivision map (see *Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825 [118 Cal.Rptr. 146, 529 P.2d 570]); or the granting of a zoning variance (see *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12]). Such land use decisions affect the community at large as well as the individual applicant. Moreover, the decision, in each instance, is based on the application of specific standards to existing facts.

For example, under the California Coastal Zone Act (Pub. Resources Code, § 30000 et seq.), the California Coastal Commission may not grant a coastal development permit unless it finds that the proposed development is consistent with the objectives of the act. (Pub. Resources Code, § 30604.) Despite the interrelationship of the permit function with the coastal commission's quasi-legislative planning function, the courts have uniformly held that the coastal permit process is adjudicatory. As stated by the court in *Patterson* v. *Central Coast Regional Com., supra,* 58 Cal.App.3d at page 841: "The mere fact that the development must be found consistent with the broadly stated findings, declarations and objectives of the Act . . . does not make the permit decision a 'fundamentally political question' . . . . The permit proceedings, while obviously and expressly encompassing the same goals as the ultimate coastal plan, [are] nonetheless concerned with the *current* application of the Act's existing findings, declarations and objectives to particular permit applications involving existing factual situations, as adduced at evidentiary hearings. This is the essence of an adjudicatory determination." (Italics in original.) (See also *City of Coronado* v. *California Coastal Zone Conservation Com.* (1977) 69 Cal.App.3d 570, 574 [138 Cal.Rptr. 241].)

Respondents' reliance on *Arnel Development Co.* v. *City of Costa Mesa, supra,* 28 Cal.3d 511, and other zoning cases (see, e.g., *San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973]) is misplaced. "California land-use cases have established generic classifications, viewing zoning ordinances as legislative and other decisions, such as variances and subdivision map approvals, as adjudicative." (*Arnel Development Co.* v. *City of Costa Mesa, supra,* at p. 523.) The decision to grant or deny a residential development allotment falls within the latter category of land use decisions.

Respondents' remaining contention is that the growth control system involves the rudimentary elements of the political process: the balancing of private interests against the public welfare. Therefore, respondents argue it must be viewed as legislative. In support of this argument, respondents rely on *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271 [63 Cal.Rptr. 889]. In *Wilson,* a municipal water district denied the petitions of two landowners to exclude their property from the district and refused to consent to the annexation of the same property by a contiguous water district. In classifying the district's decision as legislative, the court observed that the petitions directly challenged the district's water policy; that the petitions represented a continuation of a community struggle over the district's water policy; and that the petitions challenged the very existence of the water district. Under these circumstances, the court held that the

petitions posed "fundamentally political questions" and the district's response represented a legislative decision. (*Id.*, at p. 281.)

The issues raised by an application for a development allotment under the Growth Control Law are significantly different. By submitting an application the developer merely requests that its proposed development be evaluated against existing criteria; the developer does not challenge the policy underlying the Growth Control Law. And unlike the struggle over the water policy in *Wilson,* the developer seeks to operate within the boundaries of existing law. Thus, *Wilson,* although it involved the efforts of individual applicants, is not analogous to this case.

*The Scope of Review.*

■ An agency's adjudicatory decision is reviewable under the administrative mandamus statute, Code of Civil Procedure section 1094.5. (See *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 514, fn. 12.) Subdivision (b) of the statute states that an abuse of discretion is established whenever the administrative agency has not proceeded in the manner prescribed by law, when its order or decision is not supported by findings, or when the findings are not supported by the evidence. Subdivision (c) further provides two tests for review of the evidence: the independent judgment standard and the substantial evidence standard. Unless a fundamental vested right is involved, the substantial evidence test is to be applied by both the trial court and appellate court. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 510, fn. 1; *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 32.)

■ Pacifica does not contend that the Council's decision affected a fundamental vested right. (See *Strumsky,* 11 Cal.3d at p. 45; *Frink* v. *Prod* (1982) 31 Cal.3d 166 [181 Cal.Rptr. 893, 643 P.2d 476].) On the limited record before us we agree. We note that under the Growth Control Law, Pacifica and other developers are required to obtain a development allotment before the City will issue a building permit. (§ 20.01.080.) Under these circumstances Pacifica properly concedes that it has yet to acquire a vested right in the planned development of its property. (See *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546]; *PMI Mortgage Ins. Co.* v. *City of Pacific Grove* (1981) 128 Cal.App.3d 724, 729 [179 Cal.Rptr. 185]; *Patterson* v. *Central Coast Regional Com., supra,* 58 Cal.App.3d at pp. 841-845.) Accordingly, judicial review is limited to a determination of whether the Council's decision is supported by substantial evidence.

*Findings.*

■ When an administrative body's decision is subject to judicial review under the substantial evidence test its decision must be supported by findings. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506.) The findings must be "sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the [Council's] action." (*Id.,* at p. 514.) Stated differently, the findings must bridge the "analytical gap between the raw evidence and ultimate decision or order." (*Id.,* at p. 515.)

■ An administrative body's findings, however, "'need not be stated with the same formality required in judicial proceedings. [Citation omitted.]'" (*Id.,* at p. 517, fn. 16; see also *McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 183-184 [131 Cal.Rptr. 462].) Thus, a summary of factual data (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 518), the language of a motion (*Hamilton* v. *Board of Supervisors* (1969) 269 Cal.App.2d 64, 67 [75 Cal.Rptr. 106]), and the reference in a motion to a staff report (*McMillan* v. *American Gen. Fin. Corp., supra,* at pp. 184-185) have been considered to be agency findings. ■ Here, Pacifica contends that the Council failed to make any findings. Respondents argue that even though the Council did not adopt formal findings, the oral remarks of members of the Council (as reflected in the transcript of the public hearings), when considered in conjunction with the Council's confirmation of the points awarded by the Board, constitute adequate findings. (See *City of Carmel-By-the Sea* v. *Board of Supervisors* (1977) 71 Cal.App.3d 84, 91-92 [139 Cal.Rptr. 214]; but see *Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825 [118 Cal.Rptr. 856].)

While the transcript of the June 2, 1982, hearing does reflect the remarks of the individual councilmen as well as the content of the motion confirming the tentative allotment allocations as the 1982 allotment awards, it does not set forth the basis for the Council's decision. In the discussions over Pacifica's application, several councilmen, as noted above, expressed concern with the high costs of the land preparation, the high costs of any housing development, and the financial difficulty of proceeding with the development on a piecemeal basis. One councilman expressed concern that Pacifica's tentative tract map approval would expire in early 1983 unless it received a development allotment. The Council debate, although reflective of the views of individual councilmen, is not the equivalent of *Topanga* findings. (See *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 44 Cal.App.3d 825.)

Recognizing that the language of a motion may constitute adequate findings, we have also examined the motion adopting the final allotment awards. (See *McMillan* v. *American Gen. Fin. Corp.*, *supra*, 60 Cal.App.3d at p. 184.) The motion, however, consists solely of the number of allotments awarded to each developer without reference to the reasons for the Council's decision. Thus, the transcript, standing alone, does not bridge the analytical gap between the raw facts and the Council's ultimate decision.

Despite the inadequacies of the transcript of the June 2, 1982, council meeting, we stop short of directing the trial court to issue a writ of mandate ordering the Council to adopt adequate findings. As noted above, when the trial court concluded that the Council's decision was legislative it excluded from evidence all written material prepared for and considered by the Council. Since the City's argument relates to documents that are not part of the appellate record, we are unable to conclude that its argument is completely without merit. In these circumstances, we leave this issue for further consideration by the trial court. Upon remand the trial court should review the entire administrative record to determine whether the Council's decision is supported by adequate findings.

Since the trial court erroneously concluded that the Council's decision was legislative, it applied the incorrect standard of judicial review and failed to consider the entire administrative record. At this point it would be appropriate to return the case to the trial court with directions to apply the proper standard of review and to consider the findings issue in light of the entire administrative record. However, for the guidance of the trial court and the Council in this case and future cases, we consider two additional issues raised by Pacifica. First, we consider whether the Council is required to adopt a final ranking before awarding allotments. A second problem is whether the Council may consider criteria not expressly mentioned in the Growth Control Law when acting on a development allotment application.

*Compilation of a Final Ranking List.*

■ Pacifica contends that under section 20.01.100 the Council is required to adopt a final ranking list before awarding development allotments. Here, it is clear that the Council awarded allotments without adopting a final ranking list. Thus, Pacifica contends that the Council did not proceed in the manner required by law. We agree. Subdivision A of section 20.01.100 provides: "The city council shall consider, at a public hearing the recommendations and rankings of the proposed developments on each of the two lists contemplated in section 20.01.090, along with any action taken by the board concerning appealed decisions, and *shall compile one list ranking each of the proposed developments, and shall award from that*

*list development allotments.* '' (Italics added.) The Council's obligation to compile a final list is clear and it is not free to bypass this procedural step.

The purpose of adopting a final list is to insure that the Council considers the Board's rankings and recommendations, and the merits of each application. When the allotment proceedings move from the Board to the Council, the Council is presented with two lists, which, in effect, must be combined into one. Given the nonbinding nature of the Board's rankings and recommendations it is essential that the Council undertake its own assessment of each development. The compilation of a final list insures that this task is fully carried out by the Council.

Respondents do not seriously challenge the Council's obligation to comply with subdivision A of section 20.01.100 before awarding development allotments. The City, however, argues that the Council's adoption and subsequent publication of the final allotment awards adequately fulfills this requirement. The City further argues that the Council's omission was harmless error. Both of these arguments are without merit.

As we have pointed out, subdivision A of section 20.01.100 requires the Council to award development allotments from the final ranking list. We fail to see how a list of the final 1982 development allotment awards can be characterized as the ranking required by subdivision A of section 20.01.100. Moreover, we cannot dismiss the Council's omission as harmless error. In our view the process of adopting a final ranking *before* awarding allotments is essential to the orderly implementation of the Growth Control Law.

*Consideration of Additional Criteria.*

As outlined above, the Growth Control Law lists nineteen criteria that the Board is to consider in evaluating development allotment applications. At the May 17, 1982, public hearing the Council announced that it intended to consider the following six additional factors: (1) the viability of phased development within the project; (2) the type of housing; (3) the location of the proposed development; (4) the estimated date of construction; (5) the adequacy of construction financing; and (6) the number of unsold units in an existing multiphase development. Pacifica contends that unless the Council amends the ordinance the decision to grant or deny an allotment application must be based solely on the criteria listed in section 20.01.090, subdivisions A and B of the Growth Control Law. (See *ante* at p. 173, fns. 5 and 6.) Pacifica's argument, however, overlooks the purposes and objectives of the Growth Control Law and the Council's discretion to award allotments.

Among its findings and declarations the Growth Control Law declares that the "city has adopted a general plan and city ordinances relating to the regulation of residential development" (§ 20.01.040, subd. A), and that its purpose "is to augment the policies of the city as recorded in the general plan and city ordinances . . . [§ 20.01.40, subd. E]."[11]

It also declares that it is in the interest of the people of the city to control residential growth to insure, for example, "a balance of housing types and values in the city which will accommodate a variety of families including families of moderate income and older families on limited and/or fixed incomes" and "balanced development of the city." (§ 20.01.040, subds. D5 and 6.) Clearly, the Growth Control Law must be read and implemented in conjunction with existing housing policies. (Cf. *Simac Design, Inc.* v. *Alciati* (1979) 92 Cal.App.3d 146, 159 [154 Cal.Rptr. 676].) Thus, when acting on a development allotment application the Council may consider criteria that further the goals and objectives of the Growth Control Law or existing housing policies.

This interpretation of the Growth Control Law is consistent with the Council's discretion to "award" development allotments from the final ranking list. (See § 20.01.100, subd. A.) Apart from imposing numerical limitations and precluding consideration of certain nonqualifying projects, the Growth Control Law does not otherwise restrict the Council's substantive discretion in awarding allotments from its final list.

Pacifica further contends that the Council abused its discretion in denying its application because the Council failed to apply the additional criteria on a uniform basis. The limited administrative record, including the absence of certainty on the findings issue, precludes consideration of this contention.

Finally, we consider an eleventh hour claim of mootness by the City. At oral argument the City informed this court that Pacifica's 1983 application for 32 development allotments was granted by the Council on September 14, 1983. These 32 allotments represent one-half of the number sought by Pacifica in its 1982 application. The City argued that this recent development renders Pacifica's action moot because Pacifica, during the course of the public hearings, reduced its 1982 request from 64 to 32. In opposition, Pacifica responded that the action is not moot because it sought 64 devel-

---

[11]Under the State Planning and Zoning Law (Gov. Code, § 65000 et seq.) the Council is required to adopt a general plan for future development of the city. The general plan must contain elements dealing with specific areas such as housing, land use, and traffic circulation. (Gov. Code, § 65302.) The housing element must identify "existing and projected housing needs and a statement of goals, policies, quantified objectives, and scheduled programs for the preservation, improvement, and development of housing." (Gov. Code, § 65583.)

opment allotments in its 1982 application. Pacifica further asserted that the 32 allotments represented the minimum number of allotments that Pacifica needed to insure the financial feasibility of its development and that it did not intend to abandon its request for 64 allotments. Finally, Pacifica argued that it was compelled by the Council to modify its 1982 request in order to be considered for any allotments.

Given the factual issues raised by the City's mootness argument, when combined with our decision to reverse the judgment, we think that the trial court is in a better position to determine what effect, if any, the 1983 allotment award should have on this action. (Cf. *Tamarind Lithography Workshop, Inc.* v. *Sanders* (1983) 143 Cal.App.3d 571, 578-579 [193 Cal.Rptr. 409].) If the trial court were to determine that the action is moot, it would be in a position to deny Pacifica any relief. If it were to reach a contrary result, the trial court could still proceed to consider the issues that we have not been able to resolve and then to grant Pacifica appropriate relief.

### DISPOSITION

Since the trial court erred in classifying the Council's decision to grant or deny a development allotment as legislative, the judgment must be reversed and the case remanded to the trial court for further proceedings. Upon remand the trial court should determine whether this action is moot as a result of the Council's action on Pacifica's 1983 development allotment application. If the trial court decides that the action is not moot, it should review the entire administrative record to determine whether the Council's decision is supported by findings. It should then enter a judgment for Pacifica consistent with its resolution of this question and with our determination that the Council failed to comply with subdivision A of section 20.01.100. (Code Civ. Proc., § 1094.5, subd. (f.).).

The judgment is reversed and the case remanded to the trial court for further proceedings consistent with the views expressed herein.

Schauer, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied December 16, 1983.