Filed 1/31/24  Scurlock v. City of Coronado CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JON SCURLOCK, Plaintiff and Appellant, v. CITY OF CORONADO, Defendant and Respondent. | D081136 (Super. Ct. No. 37-2021-00000841-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall for Plaintiff and Appellant.

Burke, Williams & Sorenson, Mark J. Austin, Thomas B. Brown, and Eric S. Phillips for Defendant and Respondent.

## I.  INTRODUCTION

Homeowner Jon Scurlock (Scurlock) challenges a series of decisions issued by the City of Coronado (Coronado), which collectively prevented his desired design for a new primary residence.  That design included an

integrated accessory dwelling unit (ADU), and Scurlock relies on the law governing ADUs to establish error. However, Coronado's actions were consistent with the text and purpose of the ADU law, and Coronado acted within its broad discretion over local zoning matters. We therefore affirm the judgment for Coronado.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Government Code Section 65852.2.*

An ADU is an "attached or a detached residential dwelling unit that provides complete independent living facilities for one or more persons and is located on a lot with a proposed or existing primary residence." (Gov. Code, § 65852.2, subd. (j)(1).)[1] The Legislature determined that ADUs are essential to addressing California's housing crisis, finding that "[ADUs] are a valuable form of housing in California," and that ADUs "provide[] additional rental housing stock" for our state. (§ 65852.150, subd. (a)(1) & (4).)

The Legislature enacted section 65852.2, which eased building restrictions on ADUs, to encourage their construction and allow ADUs in formerly prohibited areas. (See generally, § 65852.2; *Sounhein v. City of San Dimas* (1996) 47 Cal.App.4th 1181, 1184 (*Sounhein*).) "The evident intent of the Legislature in enacting section 65852.2 was to increase the state's supply of affordable housing without dramatically changing the character and stability of existing family neighborhoods. The statute is a careful balancing of the two competing interests." (*Sounhein*, at p. 1190.)

### B. *Procedural History.*

In April 2020, Scurlock sought approval from Coronado to demolish an existing house and construct a new single-family residence in its place.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

Scurlock's plans included an ADU integrated into the primary residence at the southern corner of the first floor. The ADU shared two walls with the primary residence, and the second floor of the primary residence extended over the ADU. The plans also included a carriage house over a detached garage. The total floor area of the project was 4,633 square feet. The ADU was 680 square feet, and the square footage of the other structures was 3,953.

Coronado elected to defer its review of the ADU, and it required Scurlock to submit separate applications for the project: one for the primary residence without the ADU and one for the ADU.

In August 2020, Scurlock submitted a second set of plans that omitted the ADU. The space previously designated an ADU was now labeled a bedroom. The plans also converted a bedroom located on the eastern corner of the first floor into a covered patio and removed the carriage house over the garage. The total floor area in the second set of plans was 3,958 square feet. Coronado approved these plans in September 2020.

In December 2020, Scurlock submitted a third set of plans that were similar to the first set. These plans converted the first-floor southern corner back into an ADU with the same design as the originally proposed ADU except for slight modifications to the kitchen and closet. The third set of plans also enclosed the covered patio at the eastern corner of the first floor, converting it into a den. This new den was a bedroom in the original plans. Finally, these plans expanded the detached garage and added back the carriage house on top of it. The carriage house was the same design as in the first set of plans. The ADU was 680 square feet, but it did not alter the existing square footage because it sat entirely within the walls of the primary

3

residence. The other modifications added 639 square feet to the primary residence.

On February 12, 2021, Coronado issued two separate decisions on the third set of plans. One decision approved the ADU conversion. The other denied the remaining modifications because they added square footage that would exceed the maximum floor area ratio (FAR) for Scurlock's lot. FAR "is the total of the 'gross floor area' plus the 'floor area equivalent' of all buildings on a lot divided by the 'gross lot area' " with various exclusions not relevant here. (Coronado Mun. Code, § 86.04.308.) The maximum FAR for Scurlock's lot allowed for structures totaling 4,004 square feet. In determining the allowable square footage for the other modifications, Coronado added the square footage of the existing primary residence, including the ADU (3,958), and the square footage of the other modifications (639). The total was 4,597, which exceeded the maximum of 4,004 by 593.

Scurlock challenged Coronado's decisions through an appeal to the Coronado City Council and a writ petition filed in the trial court. Both efforts failed and this appeal followed.

## III. DISCUSSION

Scurlock argues that Coronado (1) erred by including the square footage of the ADU in the FAR calculation for the additional modifications, (2) impermissibly required him to split his initial application so it could manufacture a basis to deny a portion of the project, (3) failed to properly process his third set of plans by approving the ADU first so it could deny the additional modifications, and (4) applied the ADU law in a manner that leads to absurd results contrary to the intent of the Legislature. Coronado acknowledges that the order in which permit applications for an ADU, and primary residence are considered may change the outcome, but nonetheless

4

contends it complied with the letter and spirit of the ADU law. We first address the FAR calculation and find Coronado was authorized to include the square footage of the ADU. We then jointly address Scurlock's remaining claims and find no error because the ADU law has been satisfied and Coronado acted within its discretion.

### A. Standard of Review.

We review Coronado's decisions for abuse of discretion. (See *American Chemistry Council v. Office of Environmental Health Hazard Assessment* (2020) 55 Cal.App.5th 1113, 1138.) " 'Abuse of discretion is established if the [public agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' " (*County of Kern v. State Dept. of Health Care Services* (2009) 180 Cal.App.4th 1504, 1510.) "In determining whether an agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld." (*Helena F. v. West Contra Costa Unified School Dist.* (1996) 49 Cal.App.4th 1793, 1799.)

However, "[w]e independently review issues of statutory interpretation." (*Reznitskiy v. County of Marin* (2022) 79 Cal.App.5th 1016, 1025.) " 'Our primary task . . . is to determine the Legislature's intent, giving effect to the law's purpose.' " (*Ibid.*) We first consider the words of a statute, giving them their ordinary meaning, and construing them based on the statute as a whole and the statute's purpose. (*Ibid.*) If there is no ambiguity, the plain meaning governs. (*Ibid.*) If the language is susceptible of multiple reasonable interpretations, "we ' " ' may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.' " ' " (*Ibid.*) We also look to

5

extrinsic aids, including the " ' " 'objects to be achieved, the evils to be remedied, the legislative history, [and] public policy. . . .' " ' " (*Ibid.*)

B. *Inclusion of the ADU in the FAR Determination.*

Scurlock argues Coronado disregarded state law by including the square footage of the ADU in its FAR calculation for the modifications to the primary residence. Specifically, he relies on section 65852.2, former subdivision (a)(8) (former section 65852.2(a)(8)) and section 65852.2, former subdivision (c)(2)(C) (former section 65852.2(c)(2)(C)).

When Scurlock initially applied for construction permits, section 65852.2, former subdivision (c)(1) permitted a local agency to establish minimum and maximum unit size requirements for both attached and detached ADUs. (§ 65852.2, former subd. (c)(1).) However, former section 65852.2(c)(2)(C), prohibited a local agency from establishing:

> Any other minimum or maximum size for an accessory dwelling unit, size based upon a percentage of the proposed or existing primary dwelling, or limits on lot coverage, floor area ratio, open space, and minimum lot size, for either attached or detached dwellings that does not permit at least an 800 square foot accessory dwelling unit that is at least 16 feet in height with four-foot side and rear yard setbacks to be constructed in compliance with all other local development standards. (§ 65852.2, former subd. (c)(2)(C), added by Stats. 2019, ch. 659, § 1.5.)[2]

Scurlock's reliance on former section 65852.2(c)(2)(C) is misplaced. He claims it evinces an intent to encourage property owners to add square footage that would not otherwise be allowed, and that square footage of an ADU cannot be taken away from the primary residence. However, former

_____

[2] In 2022, the Legislature amended former section 65852.2(c)(2)(C). (See Stats. 2022, ch. 650, § 1; Stats. 2022, ch. 664, § 2.5.) However, its substance remains unchanged.

section 65852.2(c)(2)(C) only prohibited local governments from enforcing FAR if it would prevent an ADU of 800 square feet or less. It did not address the current issue, which is whether square footage of an ADU may be considered when determining the FAR for modifications to the primary residence.

As noted, Scurlock also claims that Coronado's inclusion of the square footage of the ADU in its FAR calculation violated former section 65852.2(a)(8). At the time of Scurlock's initial application, that section provided, "The accessory dwelling unit shall not be considered in the application of any local ordinance, policy, or program to limit *residential growth*." (§ 65852.2, former subd. (a)(8), added by Stats. 2016, ch. 735, § 1.5,[3] italics added.) Scurlock contends "residential growth" includes FAR, so Coronado was prohibited from considering the square footage of the ADU in its FAR calculation.

However, as Coronado points out, in the land-use context, limitations on residential growth mean controlling the number of *dwellings*. (See, e.g., *Pacifica Corp. v. City of Camarillo* (1983) 149 Cal.App.3d 168, 172 ["residential growth control ordinance" limited the number of units that could be constructed and established a board to evaluate the impact of a planned residential development]; *Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 815 [city adopted a growth control ordinance that limited the number of dwelling units to achieve "a steady rate of residential growth"]; *Del Oro Hills v. City of Oceanside* (1995) 31 Cal.App.4th 1060, 1067 ["residential growth control ordinance" set a maximum number of dwelling units to be

---

[3] This provision is now in subdivision (a)(11) in the current version of section 65852.2.

constructed each year]; *Arcadia Development Co. v. City of Morgan Hill* (2008) 169 Cal.App.4th 253, 257 [local measure distributed a limited number of housing allotments to limit growth and "concentrate residential growth toward the center of the city"].)

By comparison, FAR limits the total *square footage* of all structures on a single lot based on the size of the lot. It governs the structures' mass, not the number of dwellings or dwelling units. While increased floor area can provide space for additional residents as Scurlock suggests, that is not FAR's main use. Rather, FAR limitations are imposed to control the bulk of buildings, not the number of residents or dwellings. Accordingly, the term "residential growth" in former section 65852.2(a)(8) did not refer to FAR, and it did not prohibit Coronado from including the square footage of the ADU in its FAR calculation.

Our interpretation of the ADU law is consistent with the Government Code sections that grant bonuses to low-income housing developments. The available benefits in that context include a "density bonus," which increases the allowable number of units (§ 65915, subds. (f), (*o*)(6)), and a "floor area ratio bonus," which increases the allowable FAR. (§ 65917.2, subd. (a)(3).) This reflects that matters of population concentration, like residential growth, are treated separately from matters of building concentration, such as FAR. Further, the absence of a floor area ratio bonus for the primary residence in section 65852.2 indicates the Legislature did not intend ADUs to confer additional square footage to primary residences.

Scurlock's approach also leads to inconsistent results. If residential growth includes FAR, then former section 65852.2(a)(8) would have exempted an ADU of any size from FAR limitations. That would have undermined

8

former section 65852.2(c)(2)(C), which only exempted ADUs of 800 square feet or less from FAR limitations.

Turning to the legislative history, part of the problem that motivated section 65852.2 was the trend toward fewer people living in more space. (Sen. Local Government Com., staff analysis of Sen. Bill No. 1534 (1981–1982 Reg. Sess.) as amended Apr. 12, 1982, p. 1.) According to a legislative staff analysis from the Senate Committee on Local Government, older individuals were underutilizing large single-family homes, but they were trapped in those homes due to the housing market. (*Ibid*.) Because larger homes were part of the problem that section 65852.2 sought to address, the statute should be interpreted to allow enforcement of building standards regarding the size of the primary residence, so long as those standards do not constrain ADUs.

Additionally, several amendments to section 65852.2 targeted local governments that discouraged ADUs with unnecessary conditions and procedural obstacles. (See, e.g., Sen. Floor Analysis, 3d reading of Assem. Bill No. 3198 (1993–1994 Reg. Sess.) as amended Aug. 18, 1994; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1866 (2001–2002 Reg. Sess.) as amended Aug. 22, 2002; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1069 (2015–2016 Reg. Sess.) as amended Aug. 30, 2016.) That evil is not implicated here, as including the square footage of the ADU in the FAR calculation for modifications to the primary residence affects the primary residence, not the ADU.

In short, section 65852.2 provides a square footage bonus to enable an ADU, but it does not provide a corresponding bonus to the square footage of the primary residence. Coronado was therefore authorized to include the

9

ADU when determining the FAR for the modifications to Scurlock's primary residence.

### C. *Coronado's Permit Application Process.*

As noted, Scurlock argues Coronado's permit application process allowed it to manufacture a basis to deny a portion of his project. He challenges the requirement of separate applications for the primary residence and ADU, and the order in which Coronado reviewed his third set of plans. He contends Coronado's procedure leads to absurd results because the order in which permit applications are reviewed will lead to different outcomes.

Local governments "have been constitutionally endowed with wide-ranging discretion" in land use matters. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 781–782 (*DeVita*).) "The Legislature, in its zoning and planning legislation, has recognized the primacy of local control over land use." (*Id.* at p. 782.) In enacting the chapter in which section 65852.2 is located, the Legislature intended "to provide only a minimum of limitation in order that counties and cities may exercise the maximum degree of control over local zoning matters." (§ 65800.) " '[T]he Legislature has been sensitive to the fact that planning and zoning in the conventional sense have traditionally been deemed municipal affairs. It has thus made no attempt to deprive local governments . . . of their right to manage and control such matters, but rather has attempted to impinge upon local control only to the limited degree necessary to further legitimate state interests.' " (*DeVita*, at p. 782.)

The Legislature also intended that any restrictions imposed on ADUs by local governments have "the effect of providing for the creation of [ADUs]" and "are not so arbitrary, excessive, or burdensome so as to unreasonably

10

restrict the ability of homeowners to create [ADUs] in zones in which they are authorized."  (§ 65852.150, subd. (b).)

Regarding Coronado's requirement of separate applications for the primary residence and ADU, the version of section 65852.2 in effect when Scurlock submitted his first set of plans stated:

> If the permit application to create an accessory dwelling unit or a junior accessory dwelling unit is submitted with a permit application to create a new single-family dwelling on the lot, the permitting agency may delay acting on the permit application for the accessory dwelling unit or the junior accessory dwelling unit until the permitting agency acts on the permit application to create the new single-family dwelling, but the application to create the accessory dwelling unit or junior accessory dwelling unit shall be considered without discretionary review or hearing. (§ 65852.2, former subd. (a)(3), added by Stats. 2019, ch. 659, § 1.5 (former section 65852.2(a)(3)).)[4]

The plain language of former section 65852.2(a)(3) authorized Coronado to delay review of an ADU proposed with a new primary residence.  It also referred to separate permit applications for the ADU and the primary residence, indicating the Legislature contemplated a process involving two separate permit applications.  As such, Coronado acted consistently with former section 65852.2(a)(3) when it deferred review of the ADU and required Scurlock to submit separate permit applications.

Further, the pertinent inquiry is whether the local government's actions "ha[d] the effect of providing for the creation of [ADUs]," and are "not so arbitrary, excessive, or burdensome so as to unreasonably restrict the ability of homeowners to create [ADUs]."  (§ 65852.150, subd. (b).)  Scurlock

---

4    This provision was subsequently amended. (Stats. 2020, ch. 198, § 3.5; Stats. 2022, ch. 650, § 1; Stats. 2022, ch. 664, § 2.5.) The current version is substantially similar and found at section 65852.2, subdivision (a)(3)(A).

11

was ultimately allowed to construct an ADU substantially like the one he originally proposed. The approved ADU has the same square footage and is located in the same area. It also keeps the same design as the original plan, except for minor modifications to the closet and kitchen.[5]

Accordingly, Coronado's splitting of Scurlock's initial application did not violate the ADU law. Separate permits and delayed review of the ADU are consistent with the plain language of former section 65852.2(a)(3), and Coronado's actions did not unreasonably obstruct the desired ADU.

As for the claim that Coronado improperly approved the ADU first when reviewing Scurlock's third set of plans, it is premised on Scurlock's belief that the square footage of the ADU should be deducted from the primary residence's square footage. This premise is incorrect for the reasons stated above. Because there is no deduction, the order in which Coronado considered Scurlock's third set of plans did not affect the outcome. The modifications to the primary residence would have exceeded the allowable FAR regardless of whether they were considered before or after the ADU.

Turning to the claimed absurdity, Coronado acknowledges that the sequence of permit review could affect the size of the primary residence. For example, Scurlock poses a hypothetical where he could have gained additional square footage by first obtaining approval for his primary residence at the maximum square footage, and then adding the ADU later. That point was conceded at oral argument.

---

[5] There is no indication that Coronado asked for these modifications.

Although the sequence of review may affect the outcome, we find no absurdity.  FAR limitations are set and controlled by local governments,[6] and the state has impinged on that control for the limited purpose of allowing ADUs where they would not otherwise be authorized.  (See *DeVita, supra*, 9 Cal.4th at p. 782; §§ 65800, 65852.150.)  The only thing that changed based on the sequence of review employed by Coronado is the size and design of Scurlock's primary residence.  That process did not constrain Scurlock's ability to construct his desired ADU.  As such, the state's interest in the matter has been satisfied, and enforcement of FAR against the primary residence was a matter within Coronado's wide-ranging discretion.  (See *DeVita,* at pp. 781–782.)

As noted above, larger homes were part of the problem section 65852.2 sought to address.  (Sen. Local Government Com., staff analysis of Sen. Bill No. 1534 (1981–1982 Reg. Sess.) as amended Apr. 12, 1982, p. 1.)  Additionally, section 65852.2 is a balance between increasing affordable housing and maintaining the character of existing neighborhoods.  (*Sounhein, supra*, 47.Cal.App.4th at p. 1190.)  With this in mind, Coronado did not abuse its discretion in using a process that resulted in a smaller primary residence but nonetheless allowed the desired ADU.

Based on the foregoing, Scurlock has not shown any error regarding Coronado's permit application procedure.

---

[6]     For example, Coronado has established its FAR restrictions for single-family residences in Coronado Municipal Code section 86.08.035.

## IV. DISPOSITION

The judgment is affirmed. Coronado is awarded costs on appeal.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


KELETY, J.