[No. F016185. Fifth Dist. Sept. 28, 1992.]

CALIFORNIA AVIATION COUNCIL et al., Plaintiffs and Appellants, v. CITY OF CERES et al., Defendants and Respondents.

COUNSEL

Kerwin & Kerwin and Melvin C. Kerwin for Plaintiffs and Appellants.

Rushing, Lyions & Anderson and Michael L. Lyions for Defendants and Respondents.

OPINION

BIANCHI, J.*—

### STATEMENT OF THE CASE

California Aviation Council (Aviation Council) and Modesto Airport Pilots Association (Pilots) sought a writ of mandamus and filed a complaint for declaratory and injunctive relief in Stanislaus County Superior Court in May 1990. Named defendants were the City of Ceres (City), its city council, and individual council members (City Council).

Aviation Council and Pilots sought to have (1) City ordered to rescind City of Ceres Ordinance No. 89-744 adopted January 8, 1990 (ordinance);

---

*Retired judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.

(2) a declaration the ordinance was not adopted in compliance with Public Utilities Code[1] section 21676, subdivision (b); (3) a preliminary and permanent injunction staying the effectiveness of the ordinance until the propriety of its enactment had been established. The ordinance made a finding of consistency with regard to development of approximately 450 acres in the area of the Modesto airport.

Declaratory relief was sought in the second cause of action. Pilots and Aviation Council asked for a judicial determination of the rights and obligations of the parties, and for the court to declare the City Council's failure to make specific findings to be an abuse of discretion, thereby rendering the ordinance null and void. A further declaration was sought with regard to a finding of consistency by the City Council. It was also requested the ordinance be declared null and void because the finding had no evidentiary basis.

In the third cause of action, a preliminary injunction, later to be made permanent, was sought to enjoin City and City Council from allowing development of certain land covered by the ordinance.

Reasonable attorney fees and costs were also sought.

In their answer filed in June, City and City Council primarily denied the allegations, admitted making a finding of consistency, and alleged information in the petition was insufficient for them to provide other answers. The prayer included a request that the peremptory writ of mandate be denied, that the ordinance be declared lawfully enacted and valid, and that the request for a permanent injunction be denied.

A court trial followed in March. A motion for dismissal by City and City Council was heard. Following the presentation of evidence, additional briefing was ordered. Posttrial briefs were provided by the parties.

In April the court rendered a decision in favor of City and City Council. Judgment was entered in March, and notice of entry of judgment took place in May. Pilots and Aviation Council timely appeal.

### STATEMENT OF FACTS

City Council enacted the ordinance in question on January 8, 1990. The ordinance approved a portion of the Mitchell Road Corridor Specific Plan and Design Guidelines (Specific Plan). Part of the approved Specific Plan is

---

[1]All statutory references are to the Public Utilities Code unless otherwise indicated.

within an area included in the local Airport Land Use Commission (ALUC) Plan, and involves property within the approach and transitional surface of the Modesto airport. The ordinance permits residential construction and occupancy, and other related uses.

The ALUC reviewed the ordinance prior to passage and found it inconsistent with the Airport Comprehensive Land Use Plan.

A public hearing was held before the City Council on December 11, 1989, in which testimony opposing the ordinance was received. The City Council overruled ALUC's finding of inconsistency, found the ordinance consistent with section 21670, and approved the proposed land uses.

## DISCUSSION

### I. DID THE COURT ERR IN FINDING THE CITY COUNCIL MADE SPECIFIC FINDINGS AS REQUIRED BY SECTION 21676, SUBDIVISION (b)?

 Pilots and Aviation Council attack the action of the City Council primarily on the basis that the findings made were inadequate. The response by City and City Council is that there are two types of responses available to the City Council, depending upon the capacity in which the City Council is acting: legislative or administrative. Specific findings were unnecessary because the City Council was acting in a legislative capacity rather than in an administrative one. Recognizing that two types of responses exist, City and City Council do not argue in the alternative that under either requirement their findings were adequate. The threshold question, therefore, is which type of findings were required.

Section 21676 provides in pertinent part:

"(b) Prior to the amendment of a general plan or specific plan, or the adoption or approval of a zoning ordinance or building regulation within the planning boundary established by the airport land use commission pursuant to Section 21675, the local agency shall first refer the proposed action to the commission. If the commission determines that the proposed action is inconsistent with the commission's plan, the referring agency shall be notified. The local agency may, after a public hearing, overrule the commission by a two-thirds vote of its governing body *if it makes specific findings* that the proposed action is consistent with the purposes of this article stated in Section 21670." (Italics added.)

The purposes set forth in section 21670 are as follows:

"(a) The Legislature hereby finds and declares that:

"(1) It is in the public interest to provide for the orderly development of each public use airport in this state and the area surrounding these airports so as to promote the overall goals and objectives of the California airport noise standards adopted pursuant to Section 21669 and to prevent the creation of new noise and safety problems.

"(2) It is the purpose of this article to protect public health, safety, and welfare by ensuring the orderly expansion of airports and the adoption of land use measures that minimize the public's exposure to excessive noise and safety hazards within areas around public airports to the extent that these areas are not already devoted to incompatible uses.

"(b) In order to achieve the purposes of this article, every county in which there is located an airport which is served by a scheduled airline shall establish an airport land use commission. Every county, in which there is located an airport which is not served by a scheduled airline, but is operated for the benefit of the general public, shall establish an airport land use commission, except that the board of supervisors of the county may, after consultation with the appropriate airport operators and affected local entities and after a public hearing, adopt a resolution finding that there are no noise, public safety, or land use issues affecting any airport in the county which require the creation of a commission and declaring the county exempt from that requirement. The board shall, in this event, transmit a copy of the resolution to the Director of Transportation. For purposes of this section, 'commission' means an airport land use commission."

By analogy, City and City Council rely upon section 21679, in particular subdivision (b)(1), and argue the action of the City Council was legislative in nature, thereby requiring only a declaration, rather than the specific findings. Only where an administrative action is taken, it argues, are specific findings required. Section 21679 provides:

"(a) In any county in which there is no airport land use commission or other body designated to assume the responsibilities of an airport land use commission, or in which the commission or other designated body has not adopted an airport land use plan, an interested party may initiate proceedings in a court of competent jurisdiction to postpone the effective date of a zoning change, a zoning variance, the issuance of a permit, or the adoption of a regulation by a local agency, which directly affects the use of land within one mile of the boundary of a public airport within the county.

"(b) The court may issue an injunction which postpones the effective date of the zoning change, zoning variance, permit, or regulation until the governing body of the local agency which took the action does one of the following:

"(1) In the case of an action which is a legislative act, adopts a resolution declaring that the proposed action is consistent with the purposes of this article stated in Section 21670.

"(2) In the case of an action which is not a legislative act, adopts a resolution making findings based on substantial evidence in the record that the proposed action is consistent with the purposes of this article stated in Section 21670.

"(3) Rescinds the action.

"(4) Amends its action to make it consistent with the purposes of this article stated in Section 21670, and complies with either paragraph (1) or (2) of this subdivision, whichever is applicable.

"(c) The court shall not issue an injunction pursuant to subdivision (b) if the local agency which took the action demonstrates that the general plan and any applicable specific plan of the agency accomplishes the purposes of an airport land use plan as provided in Section 21675.

"(d) An action brought pursuant to subdivision (a) shall be commenced within 30 days of the decision or within the appropriate time periods set by Section 21167 of the Public Resources Code, whichever is longer.

"(e) If the governing body of the local agency adopts a resolution pursuant to subdivision (b) with respect to a publicly owned airport that the local agency does not operate, the operator of the airport shall be immune from liability for damages to property or personal injury from the local agency's decision to proceed with the zoning change, zoning variance, permit, or regulation.

"(f) As used in this section, 'interested party' means any owner of land within two miles of the boundary of the airport or any organization with a demonstrated interest in airport safety and efficiency."

■ The distinction between legislative acts of an agency and nonlegislative acts has been described as follows:

" 'Generally speaking, a legislative [act] is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual

application of such a rule to a specific set of existing facts. [Citations.]' (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; see also *Quinchard* v. *Board of Trustees* (1896) 113 Cal. 664, 670 [45 P. 856]; *Santa Ana Tustin Community Hospital* v. *Board of Supervisors* (1982) 127 Cal.App.3d 644, 650 [179 Cal.Rptr. 620].) The distinction between legislative and adjudicatory acts has also been described by the California Supreme Court as follows: 'Whenever an act undertakes to determine a question of right or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one, and not the proper exercise of legislative functions.' (*Wulzen* v. *Board of Supervisors* (1894) 101 Cal. 15, 24 [36 P. 353], quoting *Sinking-Fund Cases* (1878) 99 U.S. 700, 761 [25 L.Ed. 496, 504, 516].) The cases also hold that the classification of an administrative decision as adjudicatory or legislative does not depend on the nature of the decision-making body (*Quinchard* v. *Board of Trustees, supra,* 113 Cal. at p. 669), the procedural characteristics of the administrative process (*Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 841 [130 Cal.Rptr. 169]; *Rivera* v. *Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 586-587 [71 Cal.Rptr. 739]), or the breadth or narrowness of the administrative agency's discretion (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 834 [27 Cal.Rptr. 19, 377 P.2d 83])." (*Pacifica Corp.* v. *City of Camarillo* (1983) 149 Cal.App.3d 168, 175-176 [196 Cal.Rptr. 670].)

*Pacifica* involved an application for an allotment under the City of Camarillo's growth control ordinance to allow for residential development. The court interpreted the growth control ordinance and found the city's action in approving the project to be adjudicative rather than legislative. (149 Cal.App.3d at pp. 171-172.)

■ The actions of the City Council in this case were not legislative. The ordinance at issue is provided as appendix A:

■ "Ordinance" is defined as follows: "A rule established by authority; a permanent rule of action; a law or statute. In its most common meaning, the term is used to designate the enactments of the legislative body of a municipal corporation. An ordinance is the equivalent of a municipal statute, passed by the city council, or equivalent body, and governing matters not already covered by federal or state law. Ordinances commonly govern zoning, building, safety, etc. matters of municipality." (Black's Law Dict. (5th ed. 1979) p. 989, col. 1.)

■ Although the City Council's action is couched in the term "ordinance," it dealt with an application involving a specifically defined area

limited to approximately 450 acres. It does not set forth rules to be applied to all future cases of this type, rather it creates a rule for this area alone.

Findings where an adjudicative act takes place were discussed at length in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12]:

"We further conclude that implicit in [Code of Civil Procedure] section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order. If the Legislature had desired otherwise, it could have declared as a possible basis for issuing mandamus the absence of substantial evidence to support the administrative agency's action. By focusing, instead, upon the relationships between evidence and findings and between findings and ultimate action, the Legislature sought to direct the reviewing court's attention to the analytic route the administrative agency traveled from evidence to action. In so doing, we believe that the Legislature must have contemplated that the agency would reveal this route. Reference, in section 1094.5, to the reviewing court's duty to compare the evidence and ultimate decision to '*the* findings' (italics added) we believe leaves no room for the conclusion that the Legislature would have been content to have a reviewing court speculate as to the administrative agency's basis for decision.

". . . . . . . . . . . . . . . . . . . . . . . .

"Among other functions, a findings requirement serves to conduce the administrative body to draw legally relevant sub-conclusions supportive of its ultimate decision; the intended effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions. (See 2 Cooper, State Administrative Law (1965) pp. 467-468; Feller, *Prospectus for the Further Study of Federal Administrative Law* (1938) 47 Yale L.J. 647, 666. Cf. Comment, *Judicial Control Over Zoning Boards of Appeal; Suggestions for Reform* (1965) 12 U.C.L.A. L.Rev. 937, 952.) In addition, findings enable the reviewing court to trace and examine the agency's mode of analysis. (See *California Motor Transport Co.* v. *Public Utilities Com.* (1963) 59 Cal.2d 270, 274 [28 Cal.Rptr. 868, 379 P.2d 324]; *Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, 871 [206 P.2d 355].)" (11 Cal.3d at pp. 515-516, fn. omitted.)

Because the action of the City Council was adjudicatory in nature, it was required to make specific findings within the meaning of section 21676, and

those findings were further required to meet the standards set forth in *Topanga*.

The analogy to section 21679 is imperfect because that section applies to different circumstances. In addition, in drafting section 21676 it appears the Legislature intended that the type of findings required were those described in subdivision (b)(2) of section 21679, rather than the declaration described in subdivision (b)(1) as argued by the City and City Council. Section 21676 does not mention declarations. Instead, it requires findings without qualification, except that they be specific. Indeed, it does not even anticipate a single finding, but instead uses the plural "findings," as does subdivision (b)(2) of section 21679. If the Legislature intended a declaration to suffice, it would have been a simple matter for it to adopt language similar or identical to that in subdivision (b)(1) of section 21679 when it drafted section 21676.

City and City Council argue that the liability shifting of section 21678 when the agency overrides an ALUC finding of inconsistency (see also § 21679, subd. (e)) is dispositive on the question of whether a legislative act is carried out by the override. This argument fails to shed any light on the question.

Besides the type of finding required of the City Council, judicial review of the City Council's findings depends on the type of action it took. (*Mountain Defense League* v. *Board of Supervisors* (1977) 65 Cal.App.3d 723, 727 [135 Cal.Rptr. 588].) If the action was legislative, and a mere declaration by the City Council was required, its findings are reviewed in the trial court by the arbitrary and capricious standard. (Code Civ. Proc., § 1085; *Mountain Defense League, supra,* at p. 727.)

If the action of the City Council was quasi-judicial, either the independent judgment rule or the substantial evidence test applies. (Code Civ. Proc., § 1094.5, subds. (b) & (c); *Mountain Defense League, supra,* 65 Cal.App.3d at pp. 727-728.) ■ The independent judgment rule is applied where fundamental rights are substantially affected by the administrative decision. The trial court must then make independent findings of its own. (65 Cal.App.3d at pp. 727-728.) On appeal, we must determine if the trial court's findings are supported by substantial evidence. (*Id.* at p. 728.)

If fundamental rights are not substantially affected, the trial court applies the substantial evidence rule in reviewing whether the agency's findings are supported by the evidence. (65 Cal.App.3d at p. 728.) The same standard is applied on appeal. (*Ibid.*)

■ Aviation Council and Pilots do not argue that fundamental rights were involved. Instead, they argue, and correctly so, that the substantial evidence test applied in the trial court and also applies in this court. They continue by arguing the finding of consistency was not supported by the evidence.

The record before the trial court is extremely limited. The court had before it the ordinance, the letter of September 8, 1989, to Jake Raper, director of the Planning and Community Development Department of the City of Ceres, from Ron E. Freitas, a senior planner with the Stanislaus County Department of Planning and Community Development, and the letter of March 29, 1990, from Jay C. White, president of the Aviation Council, to Michael Lyions, attorney for the City.

There is no indication the administrative record was filed with the trial court or entered in evidence, or that the tapes and transcripts from the hearing in which the county board of supervisors took public comment on the issue of the ALUC's finding of inconsistency were before the court. (Code Civ. Proc., § 1094.5, subd. (a).) This court has likewise not been so provided. The ordinance makes reference to, and incorporates by reference, the "Specific Plan and Design Guidelines." Neither is in the record. Reference is also made to a final environmental impact report which is not included. Finally, reference is made to an exhibit A, entitled "Statement of Overriding Considerations," which is not included. Davis testified at trial. According to his testimony, he was present and testified at the hearing before the City Council. He expressed concerns to the City Council regarding noise and safety problems if the ordinance was approved as proposed.

The letter from Freitas has attached a list apparently from a letter of August 2, 1989, written by Raper. The list identifies principal uses, and then notes whether they are compatible, prohibited, or conditionally approvable. Many uses on the list are prohibited, such as hotels, motels, motor hotels, nursery schools, technical schools and churches. All of these involve large numbers of people in close proximity. Conditional approval generally involves people as well: restaurants, business offices, etc. Family residences are not listed.

Issues before the trial court were whether the action of the City Council was legislative or adjudicatory, and the type of finding required. As discussed previously, depending on the type of findings required, the trial court

would have to make its own independent findings, decide if the findings made were supported by the evidence, or whether the action of the City Council was arbitrary and capricious. The court's findings are of no help to us in reviewing what it determined on these matters, and therefore what standard of appellate review we should apply. Implying the court found one type of finding rather than another is also difficult since the court, at one point, appears to indicate to counsel for Pilots and Aviation Council that the City Council's findings should be adequate, even under the type of findings they were urging. The pertinent finding of the trial court provides:

"The Court finds as follows:

". . . . . . . . . . . . . . . . . . . . . . . . . .

"2. Plaintiff's Exhibit No. 1 (Ordinance No. 89-744) does fully comply with the statutory requirements of Public Utilities Code Section 21676(b)."

The pertinent finding of the City Council, No. 9, provides:

"9. Pursuant to Section 21676 of Article 3.5 of the Public Utilities Code of the State of California the City Council finds that the proposed land uses identified in Exhibit SP-1 of the proposed Specific Plan and Design Guidelines are those which are consistent with the purposes identified in Section 21670 of Article 3.5 of the Public Utilities Code, in that the proposed land uses will minimize the public's exposure to excessive noise and safety hazards within the area around the Modesto City County Airport to the extent that the areas are not already devoted to incompatible uses." (City of Ceres Ord. No. 89-774, adopted Jan. 8, 1990, p. 5.)

If the "specific findings" required by section 21676 are of the type enunciated in *Topanga*, the City Council's findings fall far short of the mark. The pertinent finding is not fact specific and merely declares a general conclusion. Reference is made to the purposes of section 21670, and then it is concluded the land uses minimize public exposure to excessive noise and safety hazards in the airport area. However, the critical links between the proposal, the finding, and the facts (raw evidence) are not presented as required under *Topanga*.

## DISPOSITION

Judgment is reversed. The matter is remanded to the trial court for further proceedings consistent with the opinion expressed herein. Costs on appeal to appellants.

Martin, Acting P. J., and Thaxter, J., concurred.

■■■■■■■■■■■■■■■■■■■■■■■■

## APPENDIX A

ORDINANCE NO. 89 - __744__

ORDINANCE OF THE CITY COUNCIL OF THE CITY OF CERES APPROVING THE MITCHELL ROAD CORRIDOR SPECIFIC PLAN AND DESIGN GUIDELINES WITH REGARD TO THAT PORTION OF THE SPECIFIC PLAN AND DESIGN GUIDELINES LYING NORTH OF THE INTERSECTION OF HATCH AND MITCHELL ROADS, AND APPROVING HIGH DENSITY RESIDENTIAL USES IN THE MIXED USE 2 CATEGORY FOR PROPERTY LYING OUTSIDE THE AIRPORT TRANSITION ZONE.

WHEREAS, the City of Ceres duly instituted proceedings to establish a Specific Plan and Design Guidelines for the Mitchell Road corridor; and,

WHEREAS, a copy of the Mitchell Road Corridor Specific Plan is on file in the Office of the City Clerk of the City of Ceres, which Plan establishes comprehensive guidelines and regulations for the development of approximately 450 acres located along a 2 1/2 mile stretch of Mitchell Road between Highway 99 and the Tuolumne River within the City of Ceres; and,

WHEREAS, in order to further insure that design criteria are adhered to, a set of Design Guidelines have been prepared as a separate document and in conjuction with the Mitchell Road Corridor Specific Plan, which Guidelines cover project design criteria, including site planning, architecture, circulation, open space and recreation, landscaping and lighting; and,

WHEREAS, the Final Environmental Impact Report prepared with regard to the said Mitchell Road Corridor Specific Plan and Design Guidelines has been duly certified by the City Council of the City of Ceres as having been completed in accordance with

Law Offices Of
RUSHING, LYIONS
& ANDERSON
125 McHENRY AVE
MODESTO, CALIF. 95354

522-2890

APPENDIX A
-1-

PLAINTIFF'S
EXHIBIT
2
NO. 2541

F, C

the requirements of the California Environmental Quality Act and related State Guidelines; and,

WHEREAS, a copy of the Mitchell Road Corridor Specific Plan including the Design Guidelines is on file in the Office of the City Clerk of the City of Ceres; and,

WHEREAS, at its regularly scheduled meeting of June 19, 1989, the Planning Commission of the City of Ceres duly concluded its public hearings regarding the said Specific Plan and Design Guidelines, duly made certain findings,and duly recommended to the City Council of the City of Ceres that the City Council adopt a statement of Overriding Considerations and approve the proposed Specific Plan and Design Guidelines; and,

WHEREAS, at its regularly scheduled meeting of August 28, 1989, the City Council of the City of Ceres duly held its further public hearing regarding the proposed Specific Plan and Design Guidelines and did at said meeting adopt Ordinance No. 89-739 approving that portion of the proposed Specific Plan and Design Guidelines lying south of the intersection of Hatch and Mitchell Roads; and,

WHEREAS, at said meeting of August 28, 1989, the City Council of the City of Ceres did continue the public hearing to December 11, 1989, at 7:45 P.M., for the purpose of considering any action taken by the Airport Land Use Commission regarding that portion of the proposed Specific Plan and Design Guidelines lying north of the intersection of Hatch and Mitchell Roads and

Law Offices Of
RUSHING, LYIONS
& ANDERSON
125 McHENRY AVE
MODESTO, CALIF 95354

529-3890

-2-

within the jurisdiction of the Airport Land Use Commission; and,

WHEREAS, by letter of September 8, 1989, the Airport Land Use Commisson advised the City of Ceres that the proposed Specific Plan and Design Guidelines was inconsistent with the Airport Land Use Commission Plan; and,

WHEREAS. at the continued public hearing held on December 11, 1989, a request was made to allow high density residential development in the Mixed Use Two Category for property lying outside the airport transition zone as shown on Exhibit "C" - SP-1.

NOW, THEREFORE, the City Council of the City of Ceres does hereby make the following findings regarding the proposed Mitchell Road Corridor Specific Plan and Design Guidelines:

1 Reasonable alternatives to the plan and their implications have been considered.

2. The scope and depth of environmental and policy analysis are commensurate with the level of detail contained in the plan and the specificity of land use entitlement its adoption authorizes.

3. Implementation of the Specific Plan, ensures that concerns identified at this level of planning are resolved as part of the more detailed Site Plan review, which must be completed before private development may proceed.

4. Administration of the plan is thoroughly integrated into the City's development processing system.

Law Offices Of
RUSHING, LYIONS
& ANDERSON
125 McHENRY AVE
MODESTO, CALIF 95354

629-2680

-3-

5. All subjects required in a Specific Plan by the California Government Code and applicable City Ordinances are appropriately and adequately covered.

6. Adequate time and opportunities have been afforded interested organizations and members of the public to comment on, or propose changes to, the plan if they so desired.

7. The plan and its policies will be used to guide development in the City and shape all subsequent land use entitlements for the Specific Plan Area.

8. The City Council of the City of Ceres does hereby declare that it has reviewed and considered the information contained in the Final Environmental Impact Report, and finds that there are certain significant impacts identified by the Final Environmental Impact Report which cannot be mitigated to acceptable levels, which impacts include noise generation, increased traffic along the Mitchell Road corridor, air quality, and loss of agricultural lands. In that regard the City Council of the City of Ceres does hereby find that there are specific economic, social, or other considerations which make it infeasible to mitigate the impacts identified in the Final Environmental Impact Report, and in that regard the City Council does hereby adopt its Statement of Overriding Considerations as contained in Exhibit "A" which is attached hereto and incorporated herein by reference.

9. Pursuant to Section 21676 of Article 3.5 of the Public Utilities Code of the State of California the City

Law Offices Of
RUSHING, LYIONS
& ANDERSON
125 McHENRY AVE
MODESTO, CALIF 95354
529-3890

-4-

Council finds that the proposed land uses identified in Exhibit SP-1 of the proposed Specific Plan and Design Guidelines are those which are consistent with the purposes identified in Section 21670 of Article 3.5 of the Public Utilities Code, in that the proposed land uses will minimize the public's exposure to excessive noise and safty hazards within the area around the Modesto City County Airport to the extent that the areas are not already devoted to incompatible uses.

NOW, THEREFORE, IT IS HEREBY ORDAINED by the City Council of the City of Ceres as follows:

1. The proposed Mitchell Road Corridor Specific Plan and Design Guidelines, a copy of which is on file in the Office of the City Clerk of the City of Ceres, and incorporated herein by reference, is hereby approved and adopted with regard to that portion of the Specific Plan and Design Guidelines lying north of the intersection of Hatch and Mitchell Road. Those Planned Community Master Plans and Development Plans previously approved which are in compliance with the Specific Plan and Design Guidelines need not be reconsidered. However, prior to implementation of such projects, staff shall review said projects and shall implement such mitigation measures as may be required to insure compliance with the Specific Plan and Design Guidelines adopted pursuant to this Ordinance.

2. The proposed Specific Plan and Design Guidelines is modified to allow high density residential development in the Mixed Use Two Category for property lying outside the airport transition zone as shown on Exhibit SP-1.

Law Offices Of
RUSHING, LYIONS
& ANDERSON
125 McHENRY AVE
MODESTO CALIF 95354

526-3690

-5-

This Ordinance shall take effect and be in full force and operation from and after thirty (30) days from its final passage and adoption and shall be published at least once in the Ceres Courier, the Official Newspaper of the City of Ceres.

The foregoing Ordinance was introduced at a regular meeting of the City Council of the City of Ceres held on the 26th day of December, 1989, and was finally passed and adopted at the regular meeting of the City Council of the City of Ceres held on the 8th day of _____January_____, 1990, by the following votes:

AYES: COUNCILMEMBER: McKay, Hinton, Caruso, McBride, Mayor Arrollo

NOES: COUNCILMEMBER: None

ABSENT: COUNCILMEMBER: None

APPROVED:

_____
LEWIS ARROLLO, MAYOR

ATTEST:

_____
PATRICIA E. LAFFOON, CITY CLERK

SEAL IMPRESSED

-6-

Law Offices Of
RUSHING LYIONS
& ANDERSON
125 McHENRY AVE
MODESTO, CALIF 95354