[No. B206957. Second Dist., Div. Six. Aug. 4, 2009.]

CITIZENS FOR PLANNING RESPONSIBLY et al., Plaintiffs and Respondents, v.
COUNTY OF SAN LUIS OBISPO et al., Defendants and Appellants;
SAN LUIS OBISPO MARKETPLACE ASSOCIATES et al., Real Parties in Interest and Appellants.

[No. B212254. Second Dist., Div. Six. Aug. 4, 2009.]

CITIZENS FOR PLANNING RESPONSIBLY et al., Plaintiffs and Respondents, v.
COUNTY OF SAN LUIS OBISPO et al., Defendants and Respondents;
SAN LUIS OBISPO MARKETPLACE ASSOCIATES et al., Real Parties in Interest and Appellants.

358

362

## Counsel

Warren R. Jensen, County Counsel, and James B. Orton, Deputy County Counsel, for Defendants and Appellants and for Defendants and Respondents.

Bingham McCutchen, Stephen L. Kostka, Barbara J. Schussman and Marie A. Cooper for Real Parties in Interest and Appellants San Luis Obispo Marketplace Associates LLC, Ernest F. Dalidio, Jr., and Clara B. Dalidio.

Andre, Morris & Buttery, Michael J. Morris and Dennis Law for Real Parties in Interest and Appellants Ernest F. Dalidio, Jr., and Clara B. Dalidio.

Shute, Mihaly & Weinberger, Rachel B. Hooper, Ellison Folk and Kevin P. Bundy for Plaintiffs and Respondents.

OPINION

PERREN, J.—The State Aeronautics Act (SAA) (Pub. Util. Code, § 21001 et seq.)[1] establishes a comprehensive system "to further and protect the public interest in aeronautics and aeronautical progress" and specifies the means to do so. (§ 21002.) Included in the SAA are declarations of purpose, which encompass the development, expansion and regulation of public airports and adjacent lands to promote public safety, and to minimize exposure to safety hazards and noise. (§ 21670, subd. (a).) These goals are to be achieved, in part, by use of airport land use commissions (§ 21670, subd. (b)), to "formulate an airport land use compatibility plan that will provide for the orderly growth of each public airport and the area surrounding the airport," to "safeguard the general welfare of the inhabitants within the vicinity of the airport and the public in general." (§ 21675, subd. (a).) Final authority for proposed action, however, lies with the affected city or county which may, by two-thirds vote of its governing body, overrule the commission. Here, inter alia, we are asked to decide if, by use of initiative, the electorate may act as the "governing body" and act in its place. We hold that it can.

The voters of the County of San Luis Obispo adopted an initiative measure amending a county's general plan and zoning regulations to permit a 131-acre mixed use development near a county airport. A citizens group filed a petition for writ of mandate in the superior court contending the SAA establishes a comprehensive system of land use regulation near airports that precludes use of the initiative power. The trial court issued a writ of mandate invalidating the initiative and prohibiting its enforcement. In its ruling, the trial court found that the SAA preempted the field and provided the only means for land use regulation within the area subject to commission authority. Therefore the power of the initiative could not be used. The trial court also found the initiative invalid because its subject matter was "adjudicative" in nature, as opposed to "legislative."

On appeal, the proponents of the initiative, the owner and the developer of the property, contend the initiative is within the power of the electorate, is legislative in its nature, lawfully amends the county's general plan and is not preempted by the SAA. We agree and reverse.

---

[1] All statutory references are to the Public Utilities Code unless otherwise stated.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In November 2006, the residents of the County of San Luis Obispo approved Measure J, an initiative measure amending the county's general plan and zoning ordinance with respect to a 131-acre property known as the Dalidio Ranch (the property). The property is bordered by various commercial uses and Highway 101, is used for agricultural purposes, and is near the San Luis Obispo County airport.

Measure J permits a mixed use development consisting of commercial, office, residential and agricultural uses, including a four-story hotel, a wastewater treatment plant and open space and recreational amenities. The zoning code amendment contains standards for development, including maximum densities, maximum building heights, maximum floor area ratios, parking requirements, minimum and maximum building size and configurations, setback requirement and permitted uses.

The initiative requires the developer to mitigate the effects of the development by making several millions of dollars in traffic and other improvements. The initiative regulates the timing of development, contains engineering standards and standards for issuing grading and building permits. The initiative also contains amendments to other general plan elements seeking to ensure general plan consistency.

The initiative states in pertinent part: "To ensure that development of the Dalidio Ranch Project is subject only to express, objective standards and ministerial actions that cannot be changed by subsequent discretionary actions or interpretations, development on land within this land use category shall be subject solely to State Law, General Plan provisions applicable to the Property and the following: [¶] the provisions of the Dalidio Ranch zoning district, . . . [¶] grading and building standards of . . . the County Code that are applicable to all development in San Luis Obispo County . . . . [¶] Building and grading permits shall be issued provided only that the applications for such permits comply with these provisions and regulations. No other existing or later-adopted regulation, guideline, ordinance, or San Luis Obispo County Code provision (including without limitation the chapters of Title 22 [county zoning regulations] other than Article 9.5 [Dalidio Ranch zoning district], and the Growth Management Ordinance) which purports to regulate or guide land use or development, shall be applicable to development on land designated under the Dalidio Ranch land use category."

Citizens for Planning Responsibly and Environmental Center of San Luis Obispo County filed a petition for writ of mandate under Code of Civil Procedure section 1085 challenging the validity of the initiative. They allege that it is preempted by state law because the property is within the airport land use plan adopted by the local airport land use commission pursuant to the SAA. They assert the SAA delegates exclusive authority to the board of supervisors as the final authority for the making of land use decisions regarding the property but that the language of the initiative impermissibly transforms this legislative act into an adjudicative one.

The trial court agreed. It found the initiative is an adjudicative, not a legislative, act because it approves a specific and detailed development project on a specific piece of property. The court also found that the SAA delegates exclusive authority to regulate land use on the property to the county board of supervisors. The court issued a writ of mandate invalidating Measure J and prohibiting the county from implementing it. The court also granted plaintiffs' request for attorney fees.

## DISCUSSION

### A.  Measure J Is a Legislative Act

#### 1.  Standard of Review of Initiative Measures

Whether an initiative measure constitutes a legislative or adjudicative act requires that we construe its language. To that extent our review is de novo. (See, e.g., *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1212–1213 [246 Cal.Rptr. 629, 753 P.2d 585] ["initiative measures are subject to the ordinary rules and canons of statutory construction . . ."].) However, "[o]ur review of this appeal is also strictly circumscribed by the long-established rule of according extraordinarily broad deference to the electorate's power to enact laws by initiative. The state constitutional right of initiative or referendum is 'one of the most precious rights of our democratic process.' [Citation.] These powers are reserved to the people, not granted to them. Thus, it is our duty to ' " 'jealously guard' " ' these powers and construe the relevant constitutional provisions liberally in favor of the people's right to exercise the powers of initiative and referendum. [Citation.] An initiative measure ' "must be upheld unless [its] unconstitutionality clearly, positively, and unmistakably appears." ' [Citation.] An initiative measure amending a general plan or

zoning ordinance is valid 'so long as reasonable minds might differ as to the necessity or propriety of the enactment . . . .' " (*Pala Band of Mission Indians v. Board of Supervisors* (1997) 54 Cal.App.4th 565, 573–574 [63 Cal.Rptr.2d 148].)

### 2. Amendment of a General Plan and Zoning Ordinance Are Legislative Acts

■ Only legislative acts are subject to the initiative process. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) Legislative acts are those that declare a public purpose whereas administrative, sometimes called adjudicative or quasi-adjudicative, acts implement the steps necessary to carry out that legislative purpose. (*City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 399–400 [103 Cal.Rptr.2d 269].)

■ In the land use context, legislative acts are distinguished from administrative or adjudicative acts on a categorical basis. In *Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 523–525 [169 Cal.Rptr. 904, 620 P.2d 565], our Supreme Court said: "[P]ast California land-use cases have established generic classifications, viewing zoning ordinances as legislative and other decisions, such as variances and subdivision map approvals, as adjudicative. . . . [T]he current California rule that rezoning is a legislative act is well settled by precedent . . . . We therefore adhere to the rule that a zoning ordinance is a legislative act and, as such, may be enacted by initiative."

Subsequent Supreme Court cases have sustained the principle of "generic classifications" and held that adoption and amendment of general plans is subject to referenda (*Yost v. Thomas* (1984) 36 Cal.3d 561 [205 Cal.Rptr. 801, 685 P.2d 1152]) and the initiative process (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491 [247 Cal.Rptr. 362, 754 P.2d 708]).

In *Yost v. Thomas, supra,* 36 Cal.3d 561, our Supreme Court concluded that a city council's approval of a specific plan amending a portion of the city's general plan and zoning ordinance was subject to referendum. The specific plan in *Yost* involved development of a hotel and a conference center on 32 acres and the general plan and zoning amendment related only to that specific development. The court concluded that the changes to the general plan and applicable zoning, as well as the specific plan, were legislative acts subject to

referendum. The court said: "The adoption of a general plan is a legislative act [citation]. 'The amendment of a legislative act is itself a legislative act' [citation] and the amendment of a general plan is thus a legislative act subject to referendum. [Citation.] . . . [¶] Similarly, the rezoning of land is a legislative act [citation] subject to referendum [citations]. [¶] This leaves the question whether the adoption of a specific plan is to be characterized as a legislative act. We have no doubt that the answer is affirmative. Certainly such action is neither administrative nor adjudicative. [Citations.] On the other hand the elements of a specific plan are similar to those found in general plans or in zoning regulations—the siting of buildings, uses and roadways; height, bulk and setback limitations; population and building densities; open space allocation [citation]. The statutory procedure for the adoption and amendment of specific plans is substantially similar to that for general plans [citation]. It appears therefore that the legislative aspects of a specific plan are similar to those of general plans." (*Id.* at p. 570.)

In concluding that Measure J is not a legislative act, the trial court relied on *California Aviation Council v. City of Ceres* (1992) 9 Cal.App.4th 1384 [12 Cal.Rptr.2d 163], which held that adoption of a specific plan by a city council was an adjudicative, not a legislative, act because it involved a specifically defined area of 450 acres and did not set forth rules to be applied to all future cases but rather created a rule only for the specific area. (*Id.* at pp. 1391–1392.) That case did not involve an initiative measure and did not cite the controlling Supreme Court precedent discussed above. The reasoning in *Ceres* is contrary to the views expressed in *Arnel Development Co. v. City of Costa Mesa, supra,* 28 Cal.3d at pages 522–523, and subsequently in *DeVita v. County of Napa, supra,* 9 Cal.4th at pages 770–771, where our Supreme Court reaffirmed the principles stated in *Arnel* and *Yost* with respect to the legislative nature of zoning and general plan amendments and held that the land use element of a county's general plan can be amended by initiative. Relevant Supreme Court precedent establishes that amendments to a general plan and zoning ordinance are legislative acts subject to the initiative process.

### B. *Preemption Issues*

#### 1. *Standard of Review*

"The issue of preemption of a municipal ordinance by state law presents a question of law, subject to de novo review." (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 129 [38 Cal.Rptr.3d 575].)

### 2. The SAA

■ The SAA regulates matters pertaining to aviation in California, including public and private airports and aviation safety and hazards. A major purpose of the SAA is to protect the public against noise and the adverse environmental effects of airports. (§ 21670, subd. (a)(2); *Bakman v. Department of Transportation* (1979) 99 Cal.App.3d 665, 677 [160 Cal.Rptr. 583].) The SAA provides for the establishment of airport land use commissions in California counties "to protect public health, safety, and welfare by ensuring the orderly expansion of airports and the adoption of land use measures that minimize the public's exposure to excessive noise and safety hazards within areas around public airports to the extent that these areas are not already devoted to incompatible uses." (§ 21670, subd. (a)(2).)[2]

The powers and duties of an airport land use commission are described in section 21674. Those include: "(a) To assist local agencies in ensuring compatible land uses in the vicinity of all new airports and in the vicinity of existing airports to the extent that the land in the vicinity of those airports is not already devoted to incompatible uses. [¶] (b) To coordinate planning at the state, regional, and local levels so as to provide for the orderly development of air transportation, while at the same time protecting the public health, safety, and welfare. [¶] (c) To prepare and adopt an airport land use compatibility plan pursuant to Section 21675. [¶] (d) To review the plans, regulations, and other actions of local agencies and airport operators pursuant to Section 21676."

---

[2] The act contains the following public policy declarations:

(a)(1) "It is in the public interest to provide for the orderly development of each public use airport in this state and the area surrounding these airports so as to promote the overall goals and objectives of the California airport noise standards adopted pursuant to Section 21669 and to prevent the creation of new noise and safety problems." (§ 21670, subd. (a)(1).)

(a)(2) "It is the purpose of this article to protect public health, safety, and welfare by ensuring the orderly expansion of airports and the adoption of land use measures that minimize the public's exposure to excessive noise and safety hazards within areas around public airports to the extent that these areas are not already devoted to incompatible uses." (§ 21670, subd. (a)(2).)

(b) "In order to achieve the purposes of this article, every county in which there is located an airport which is served by a scheduled airline shall establish an airport land use commission. Every county, in which there is located an airport which is not served by a scheduled airline, but is operated for the benefit of the general public, shall establish an airport land use commission, except that the board of supervisors of the county may, after consultation with the appropriate airport operators and affected local entities and after a public hearing, adopt a resolution finding that there are no noise, public safety, or land use issues affecting any airport in the county which require the creation of a commission and declaring the county exempt from that requirement." (§ 21670, subd. (b).)

Each airport land use commission is required to prepare an airport land use plan "that will provide for the orderly growth of each public airport and the area surrounding the airport within the jurisdiction of the commission, and will safeguard the general welfare of the inhabitants within the vicinity of the airport and the public in general." (§ 21675, subd. (a).)

■ If a city or a county proposes to amend its general plan or zoning ordinance in an area within an airport land use plan, it must first submit its proposed action to the airport land use commission for a determination of whether the action is consistent with the airport land use plan. (§ 21676, subd. (b).) If the airport land use commission determines that the proposed action is inconsistent with the airport land use plan, the city or county may overrule the determination by a two-thirds vote of its governing body and make specific findings that the proposed action is consistent with the purposes of the SAA. (§ 21676, subd. (b).)[3]

---

[3] Section 21676, subdivisions (b) and (c) state: "(b) Prior to the amendment of a general plan or specific plan, or the adoption or approval of a zoning ordinance or building regulation within the planning boundary established by the airport land use commission pursuant to Section 21675, the local agency shall first refer the proposed action to the commission. If the commission determines that the proposed action is inconsistent with the commission's plan, the referring agency shall be notified. The local agency may, after a public hearing, propose to overrule the commission by a two-thirds vote of its governing body if it makes specific findings that the proposed action is consistent with the purposes of this article stated in Section 21670. At least 45 days prior to the decision to overrule the commission, the local agency governing body shall provide the commission and the division a copy of the proposed decision and findings. The commission and the division may provide comments to the local agency governing body within 30 days of receiving the proposed decision and findings. If the commission or the division's comments are not available within this time limit, the local agency governing body may act without them. The comments by the division or the commission are advisory to the local agency governing body. The local agency governing body shall include comments from the commission and the division in the public record of any final decision to overrule the commission, which may only be adopted by a two-thirds vote of the governing body.

"(c) Each public agency owning any airport within the boundaries of an airport land use compatibility plan shall, prior to modification of its airport master plan, refer any proposed change to the airport land use commission. If the commission determines that the proposed action is inconsistent with the commission's plan, the referring agency shall be notified. The public agency may, after a public hearing, propose to overrule the commission by a two-thirds vote of its governing body if it makes specific findings that the proposed action is consistent with the purposes of this article stated in Section 21670. At least 45 days prior to the decision to overrule the commission, the public agency governing body shall provide the commission and the division a copy of the proposed decision and findings. The commission and the division may provide comments to the public agency governing body within 30 days of receiving the proposed decision and findings. If the commission or the division's comments are not available within this time limit, the public agency governing body may act without them. The comments by the division or the commission are advisory to the public agency governing body. The public agency governing body shall include comments from the commission and the division in the final decision to overrule the commission, which may only be adopted by a two-thirds vote of the governing body."

### 3. *Principles of Preemption*

■ The power of the initiative may be preempted in three ways: (1) the Legislature may so completely occupy the field in a matter of statewide concern that all, or conflicting, local legislation is precluded; (2) the Legislature may delegate exclusive authority to a city council or board of supervisors to exercise a particular power over matters of statewide concern; or (3) the exercise of the initiative power would impermissibly interfere with an essential governmental function.

■ In determining whether Measure J is preempted by the SAA, we must presume that legislative decisions of a local governing body are subject to initiative and referendum. (*DeVita v. County of Napa, supra,* 9 Cal.4th at p. 775; *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 777 [35 Cal.Rptr.2d 814, 884 P.2d 645].) The presumption is rebuttable only by a "definite indication" that the Legislature has intended to restrict or preempt that right. (*DeVita,* at p. 776.)

"The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption. [Citation.] [The California Supreme Court] ha[s] been particularly 'reluctant to infer legislative intent to preempt a field covered by municipal regulation when there is a significant local interest to be served that may differ from one locality to another.' " (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821].)

"Thus, when local government regulates in an area over which it traditionally has exercised control, . . . California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute. [Citation.] The presumption against preemption accords with our more general understanding that 'it is not to be presumed that the [L]egislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' " (*Big Creek Lumber Co. v. County of Santa Cruz, supra,* 38 Cal.4th at pp. 1149–1150.)

### 4. *The SAA Does Not Fully Occupy the Field of Land Use Regulation Near Airports*

■ Respondents contend that the scheme of land use regulation in the SAA imposes a statewide mandate that may not be superseded by the local

electorate's exercise of the initiative power. Undoubtedly, public safety and environmental concerns related to aviation and airports are matters of state-wide concern. But a state statutory scheme does not restrict or preempt the power of the initiative simply because it implicates matters of statewide concern. (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 537–538 [45 Cal.Rptr.2d 117].)

■ A local ordinance enters a field fully occupied by state law either when the Legislature expressly manifests its intent to occupy the legal area or when the Legislature impliedly occupies the field. (*DeVita v. County of Napa, supra,* 9 Cal.4th at p. 776.) The SAA does not expressly or impliedly preempt local land use regulation. To the contrary, the SAA expressly permits local regulation. After the local airport land use commission prepares and adopts an airport land use plan, the balance of power shifts to the local agency. It is the local agency, not the airport land use commission, which initiates amendments to the airport land use plan and makes the ultimate determinations whether local land use decisions are consistent with the airport land use plan. Although the airport land use commission is given authority to review and comment on proposed amendments and other land use decisions for consistency with the airport land use plan, the SAA states repeatedly that the comments of an airport land use commission as to consistency are advisory only. (§ 21676, subds. (a), (b), (c).)

■ The SAA contains additional indications that the Legislature did not intend to interfere with the traditional municipal function of land use regulation. Section 21005 states: "This part shall not be construed as limiting any power of the state or a political subdivision to regulate airport hazards by zoning." Section 21676.5, subdivision (b), states that after a local agency has revised its general plan or specific plan or has overruled the airport land use commission, the proposed action of the local agency shall not be subject to further airport land use commission review. ■ Section 21674.7, subdivision (b), states that local agencies are to be guided by criteria regarding the height, use, noise, safety, and density developed by the state, but "[t]his subdivision does not limit the authority of local agencies to overrule commission actions or recommendations . . . ."

Government Code section 65302.3, relied on by respondents, is not to the contrary. Subdivision (a) states: "The general plan, and any applicable specific plan . . . shall be consistent with the plan adopted or amended pursuant to Section 21675 of the Public Utilities Code." However, subdivision (c) provides: "If the legislative body does not concur with any provision of the plan required under Section 21675 of the Public Utilities Code, it may satisfy the provisions of this section by adopting findings pursuant to Section 21676 of the Public Utilities Code." Thus, Government Code section 65302.3

does no more than reiterate the provisions of the SAA giving the local legislative body the ultimate authority to regulate land use within the airport land use plan area.

■ Although the SAA contains detailed and extensive regulation over some aspects of aviation, it gives ultimate regulatory authority to local governing bodies with respect to land use near airports. (See *Stagg v. Municipal Court* (1969) 2 Cal.App.3d 318, 322 [82 Cal.Rptr. 578] [rejecting claim that SAA preempts local ordinance limiting hours of operation of takeoff at local airport, despite fact that some aspects of airport operations are matters of statewide concern].) The SAA's deference to the decisionmaking authority of the local agency indicates that the Legislature did not intend to disturb the "wide-ranging discretion" endowed by the Constitution with respect to formulating basic land use policy. (*DeVita v. County of Napa, supra*, 9 Cal.4th at p. 782.)

Local agencies have traditionally exercised control over land use regulation. Absent a clear indication of preemptive intent, we must presume that local regulation and the initiative power do not conflict with the SAA. (*Big Creek Lumber Co. v. County of Santa Cruz, supra*, 38 Cal.4th at p. 1149; see also *City of Dublin v. County of Alameda* (1993) 14 Cal.App.4th 264, 276 [17 Cal.Rptr.2d 845] [" 'An expressed intent to allow local regulation, or an express recognition of local regulation, is convincing evidence that the state legislative scheme was not intended to occupy the field.' "].)[4]

5. *The SAA Does Not Delegate Exclusive Authority to the Board of Supervisors Nor Interfere with an Essential Governmental Function*

■ Respondents contend that the SAA delegates exclusive authority to the board of supervisors to make land use decisions in an airport land use plan area. When the Legislature has not completely occupied a field, the initiative and referendum power is presumed to apply "unless there is a 'clear showing of [legislative] intent' to exclusively delegate [that] authority . . . to the governing body." (*DeVita v. County of Napa, supra*, 9 Cal.4th at p. 780.)

---

[4] Respondents cite language in *Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 389, 384–385 [60 Cal.Rptr.3d 247, 160 P.3d 116], that land use compatibility plans may "make it more difficult for local agencies to change their policies in the future to permit increased development within [a] [c]ompatibility [z]one" and "an airport land use compatibility plan can operate like a multijurisdictional general plan to trump the land use planning authority that affected jurisdictions might otherwise exercise through general and specific plans or zoning." The issue in that case was whether an airport land use commission conducted sufficient environmental review when it adopted an airport land use plan. It did not involve the validity of an initiative measure. Therefore, the language is dicta and is of little precedential value. (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 65–66 [2 Cal.Rptr.2d 389, 820 P.2d 613].)

"In ascertaining whether the Legislature intended to delegate authority exclusively to the local governing body, the 'paramount factors' are '(1) statutory language, with reference to "legislative body" or "governing body" deserving of a weak inference that the Legislature intended to restrict the initiative and referendum power, and reference to "city council" and/or "board of supervisors" deserving of a stronger one [citation]; [and] (2) the question whether the subject at issue was a matter of "statewide concern" or a "municipal affair," with the former indicating a greater probability of intent to bar initiative and referendum [citation].' " (*Totten v. Board of Supervisors* (2006) 139 Cal.App.4th 826, 834 [43 Cal.Rptr.3d 244], quoting *DeVita v. County of Napa, supra*, 9 Cal.4th at p. 776.) In *DeVita*, the Supreme Court cautioned that these factors are not a "set of fixed rules" and the ultimate question is one of legislative intent. (*DeVita*, at p. 777.)

With respect to the first factor, section 21676 authorizes the "governing body" to make findings rejecting the comments of the airport land use commission as to the consistency of a proposed action with the airport land use plan. Thus, only a weak inference of delegation is present.

In contrast to the generic reference to the "governing body" in section 21676, section 21661.6, subdivision (c) reposes authority specifically in the "board of supervisors" and the "city council" to make decisions regarding the expansion or enlargement of an existing airport. In *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (2003) 113 Cal.App.4th 465 [6 Cal.Rptr.3d 367], the court held that the specificity of these terms creates a strong inference that the Legislature intended to preclude action regarding enlargement or expansion of existing airports by initiative and referendum.

Similarly, in *Committee of Seven Thousand v. Superior Court, supra*, 45 Cal.3d 491, our Supreme Court contrasted the language of Government Code section 66484.3 which refers specifically to city council action, with Government Code section 66484 which refers to "[a] local ordinance." The court said: "Under the principle of statutory construction that a material change in the language of a legislative enactment is ordinarily viewed as showing an intent on the part of the Legislature to change the meaning of the statute [citation], the insertion of a specific reference to city councils in [Government Code] section 66484.3, not found in [Government Code] section 66484, is evidence of intent to confer authority specifically and exclusively on the city council." (*Committee of Seven Thousand*, at p. 507.)

The Legislature's use of the term "governing body" in section 21676 rather than "board of supervisors" indicates the Legislature did not intend an exclusive delegation precluding the initiative process. (See *City of Dublin v. County of Alameda, supra*, 14 Cal.App.4th at p. 280 ["When a statute

contains a particular provision, the omission of that provision from similar statutes on the same or a related subject reveals a different intent."].)

■ With respect to the second factor, as we have explained, land use regulation has long been held to be a quintessential municipal affair and restrictions on the referendum power must be clearly indicated. ■ The SAA does not contain the clear indication of preemptive intent required to preclude the electorate from exercising its constitutional power of initiative.

6. *The Requirement That the Governing Body Make Findings to Overrule Comments Does Not Preclude the Initiative Process*

Respondents contend that Measure J is invalid because the SAA requires that findings be made to support a decision to overrule an airport land use commission's comments as to the consistency of a county's proposed land use action with the airport land use plan. (§ 21676, subd. (b).) They argue that the requirement of findings precludes the initiative process because making findings is an adjudicative, not a legislative, act and it is beyond the power of the electorate to make such findings.

■ Statutory procedural requirements governing the adoption and amendment of zoning ordinances and general plans generally do not apply to initiatives. The courts have held inapplicable statutory requirements for notice and hearing, consideration and balancing of public service needs, and adoption of findings. In *Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810 [226 Cal.Rptr. 81, 718 P.2d 68], our Supreme Court rejected an argument that an initiative growth control measure was invalid because it was adopted without making findings required by Government Code section 65863.6. That section requires a city or county to consider the effect of ordinances on local housing needs and balance those needs against public service needs and available fiscal and environmental services. The statute requires that an ordinance must contain findings as to the public health, safety and welfare which justify restricting housing opportunities.

The Supreme Court held that the initiative measure was valid even though such findings could not be made. The court reasoned: "In *Associated Homebuilders, etc., Inc. v. City of Livermore* [(1976)] 18 Cal.3d [582,] 596 [135 Cal.Rptr. 41, 557 P.2d 473], we concluded that the statutory notice and hearing provisions of Government Code sections 65853 through 65857 govern only ordinances enacted by city council action and do not limit the power of municipal electors to enact legislation by initiative. 'Procedural requirements which govern *council* action . . . generally do not apply to initiatives, any more than the provisions of the initiative law govern the enactment of ordinances in council. . . .' . . . [¶] An analysis of section 65863.6

yields a similar conclusion. When the Legislature wrote that 'each county and city shall consider the effect of ordinances adopted pursuant to this chapter on the housing needs of the region . . . and balance these needs against the public service needs of its residents and available fiscal and environmental resources,' it could not have intended the *electorate* to undertake this process when enacting legislation by initiative. How can one prove that the voters weighed and balanced the regional housing needs against the public service, fiscal, and environmental needs? We agree with *Arnel Development Co.* v. *City of Costa Mesa* (1981) 126 Cal.App.3d 330, 335 [178 Cal.Rptr. 723], that 'what was in the minds of the electorate in adopting the initiative is . . . immaterial.' It is simply not logical or feasible to place this balancing requirement on the voters." (*Building Industry Assn.* v. *City of Camarillo, supra,* 41 Cal.3d at pp. 823–824.)

■■■ Respondents attempt to distinguish *Building Industry Assn.* v. *City of Camarillo* by characterizing the findings requirement of Government Code section 65863.6 as "purely procedural," while the SAA imposes an "affirmative mandate of consistency." Respondents misread *Building Industry Assn.* The Supreme Court did not hold that the findings requirement in Government Code section 65863.6 is "procedural." It held that a statutory findings requirement, like statutory notice and hearing requirements, imposed on legislative bodies is no bar to the initiative process because the electorate cannot comply with such requirements. The statutory requirement that the governing body make findings to overrule the comments of the airport land use commission as to consistency with the airport land use plan is no more or less procedural than the requirement that a governing body make findings as to the effect of its ordinances on the housing needs of the region.

Respondents cite our decision in *Totten* v. *Board of Supervisors, supra,* 139 Cal.App.4th 826, for the proposition that where a statute imposes requirements that the electorate cannot follow, it shows an exclusive delegation of authority to the legislative body. In *Totten,* we held that the electorate cannot by initiative enact an ordinance prescribing minimum future annual budgets for county safety agencies. We based our decision primarily on the language of the applicable statutes that required the board of supervisors to prepare a budget. We also noted that the statutes imposed requirements the electorate could not follow. *Totten* is not controlling here because that case involved the fiscal affairs of the county. Fiscal matters, unlike land use regulation, have historically been determined to involve essential governmental functions that preclude the exercise of the initiative power. (See, e.g., *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832, 839 [313 P.2d 545] [referendum not

permitted where it would interfere with a legislative body's administration of fiscal powers and policies].)[5]

■ There are no cases upholding an exclusive delegation where the authority to legislate derives from a city and county's inherent and constitutionally based police power. The cases are to the contrary. (See *Ferrini v. City of San Luis Obispo* (1983) 150 Cal.App.3d 239, 248 [197 Cal.Rptr. 694] ["where the local ordinance involves the police power of the city," it must be upheld "even where the state has enacted general laws controlling the subject matter" unless there is an outright conflict]; *Merriman v. Board of Supervisors* (1983) 138 Cal.App.3d 889, 893 [188 Cal.Rptr. 343] [Despite statewide interest in uniformity of local building codes, county's ability to impose criminal sanctions for violating codes "was rooted in its constitutionally delegated police power. . . . As such it was legislative rather than administrative, and is subject to referendum." (Citation omitted.)]; *Hughes v. City of Lincoln* (1965) 232 Cal.App.2d 741, 745 [43 Cal.Rptr. 306] ["a local decision which is intrinsically legislative retains that character even in the presence of a state law authorizing or setting limits on the particular field of action"].)

■ The requirement in the SAA that the governing body make findings does not preclude the exercise of the power of initiative. (See *Associated Home Builders etc., Inc. v. City of Livermore, supra,* 18 Cal.3d at p. 595 [a statute which makes compliance with procedural requirements a prerequisite to enactment of local zoning ordinances "would be of doubtful constitutionality" if it precludes actions by initiative on a subject on which a city council or board of supervisors could legislate].)

### C. *Making Consistency Findings Is a Legislative, Not a Judicial, Function*

■ A zoning decision—whether made by the local governing body or by the local electorate—must be consistent with the relevant general plan, and if it is not consistent with the general plan, it is invalid when passed. (Gov. Code, § 65860, subd. (a); *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 541 [277 Cal.Rptr. 1, 802 P.2d 317].)

■ Respondents argue that Measure J is invalid because it is inconsistent with the airport land use plan and other elements of the county's general plan. This argument is without merit for at least two reasons. First, Measure J contains amendments to affected general plan elements to make Measure J

---

[5] Respondents' reliance on *Pacifica Corp. v. City of Camarillo* (1983) 149 Cal.App.3d 168 [196 Cal.Rptr. 670], and *Patterson v. Central Coast Regional Com.* (1976) 58 Cal.App.3d 833 [130 Cal.Rptr. 169], also is misplaced. Those cases involved decisions to grant or deny development permits, not an initiative general plan and zoning amendment.

consistent with the general plan. The amendment of general plan elements in an initiative measure to ensure consistency with the subject matter of the initiative is a valid exercise of the initiative power. (*Pala Band of Mission Indians v. Board of Supervisors, supra*, 54 Cal.App.4th at pp. 577–578.)

██ More fundamentally, as the trial court concluded, a court has no authority to make such findings. Under the SAA, the power to make findings of consistency resides in the board of supervisors. We cannot usurp that authority. (See, e.g., *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 278 [32 Cal.Rptr.2d 807, 878 P.2d 566] [fact finding is a quasi-legislative function]; *Carrier v. Robbins* (1952) 112 Cal.App.2d 32, 35–36 [245 P.2d 676] [the courts will not interfere with the exercise of a factfinding function by the board of supervisors].)

### D.  *Remaining Arguments*

██ Respondents' remaining arguments can be disposed of summarily. Respondents argue that Measure J provided no notice to voters that property would be removed from the airport review designation and that general plan inconsistency would result. The argument is without merit. There has been no legislative determination that Measure J is inconsistent with the general plan. As noted above, Measure J contains amendments to various other general plan elements in an attempt to ensure consistency. Moreover, this argument is untimely. The time for making such a challenge is prior to the election. (See Elec. Code, § 9106 [elector may seek writ of mandate challenging ballot title or summary as false, misleading or inconsistent].)

Respondents argue that Measure J precludes application of the Subdivision Map Act (Gov. Code, § 66410 et seq.). This is not a correct reading of the initiative. Measure J expressly states that it is subject to state law.

██ Respondents contend Measure J impermissibly restricts the discretion of the board of supervisors and airport land use commission to make future decisions regarding the Dalidio Ranch development. A similar argument was rejected in *Rossi v. Brown* (1995) 9 Cal.4th 688 [38 Cal.Rptr.2d 363, 889 P.2d 557]. In *Rossi*, our Supreme Court observed that the people's power of initiative is greater than the power of legislative bodies because the people may bind future legislative bodies: "The people's reserved power of initiative is greater than the power of the legislative body. The latter may not bind future Legislatures [citation], but by constitutional and charter mandate, unless an initiative measure expressly provides otherwise, an initiative measure may be amended or repealed only by the electorate. Thus, through exercise of the initiative power the people *may* bind future legislative bodies other than the people themselves." (*Id.* at pp. 715–716.)

## DISPOSITION

The judgment granting the writ of mandate and the order granting attorney fees are reversed. Appellants shall recover costs on appeal.

Yegan, Acting P. J., and Coffee, J., concurred.

The petition of plaintiffs and respondents for review by the Supreme Court was denied October 14, 2009, S176230. Kennard, J., was of the opinion that the petition should be granted.